## COMMONWEALTH OF VIRGINIA

### V.

## FRANCES BURNS

Record No. 900495

July 30, 1990

Present: All the Justices

172

*Richard B. Smith, Assistant Attorney General (Mary Sue Terry, Attorney General,* on briefs), for appellant.

*Melinda Douglas, Public Defender (Susan L. Korfanty, Deputy Public Defender,* on brief), for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

As pertinent here, Code § 18.2-255.2, the so-called "Drug-Free Zone Act," makes it a separate felony, with additional punishment, for any person to distribute cocaine upon public property within 1,000 feet of any elementary, middle, or high school. The question for decision is whether considerations of due process bar the application of Code § 18.2-255.2 to a sale of cocaine made within the prescribed distance when school is not in session and no children are present.

The defendant, Frances Burns, was charged in the first count of a two-count indictment with distributing cocaine in violation of Code § 18.2-248 and in the second count with distributing the same substance "upon public property within 1000 feet of the property of a parochial elementary school" in violation of Code § 18.2-255.2. Burns entered a plea of guilty to distributing co-

caine in violation of Code § 18.2-248, as charged in the first count, and that count is not before us in this appeal.[1]

Prior to trial, Burns moved to dismiss the second count on the ground that Code § 18.2-255.2 violated her rights to due process and equal protection.[2] On January 8, 1990, finding "the 1,000 foot extension unconstitutional as applied" to Burns, the trial court dismissed the charge of violating Code § 18.2-255.2.[3]

Pursuant to Code § 19.2-398, the Commonwealth appealed the dismissal to the Court of Appeals. On March 13, 1990, that court granted the Commonwealth an appeal. The Commonwealth then suggested to this Court that the case should be certified for review pursuant to Code §§ 19.2-407 and 17-116.06(A) and (B)(1).

In suggesting that this Court should certify the case for review, the Attorney General argued that a truly definitive ruling cannot be obtained in the Court of Appeals because that court does not treat a decision by one of its panels as binding upon another panel which later confronts the same question. *See Vescuso* v. *Commonwealth*, 4 Va. App. 32, 38 n.3, 354 S.E.2d 68, 71 n.3 (1987). The Court of Appeals recognizes that its practice departs from generally accepted principles of stare decisis. *See Walters* v. *Common-*

---

[1] Code § 18.2-248 is a general statute proscribing, *inter alia*, the sale of cocaine.

[2] At the time of the incident in question, Code § 18.2-255.2 read in pertinent part as follows:

A. It shall be unlawful for any person to manufacture, sell or distribute or possess with intent to sell, give or distribute any controlled substance, imitation controlled substance or marijuana upon the property . . . of any public, private or parochial elementary, middle or high school, upon public property within 1,000 feet of such school property . . . .

B. Violation of this section shall constitute a separate and distinct felony. Any person violating the provisions of this section shall, upon conviction, be imprisoned for a term of not less than one year nor more than five years and fined not more than $100,000. . . .

C. If a person commits an act violating the provisions of this section, and the same act also violates another provision of law that provides for penalties greater than those provided for by this section, then nothing in this section shall prohibit or bar any prosecution or proceeding under that other provision of law or the imposition of any penalties provided for thereby.

At its 1990 session, the General Assembly amended Code § 18.2-255.2 to make the section's provisions applicable to drug transactions occurring "at any time." Acts 1990, ch. 622.

[3] The trial court held against Burns on her contention that Code § 18.2-255.2(A) violates her right to equal protection of the law, and she has not questioned that holding on appeal. Accordingly, we will consider only the question whether the code section violates her right to due process of law.

*wealth,* 8 Va. App. 262, 265 n.2, 379 S.E.2d 749, 751n.2 (1989). Apparently, the court considers that because Code § 17-116.02(C) requires each panel to hear and determine, "independently of the others," the matters it is assigned, the principles of stare decisis do not apply. *See id.* at 265, 379 S.E.2d at 751.

It does not follow, however, that because panels must act independently of one another, their decisions are not subject to the rule of stare decisis. As used in Code § 17-116.02(C), acting independently merely means that each panel must decide on its own the cases it hears, not that it is free from traditional rules of decision, such as stare decisis.

Applying the rule of stare decisis in the Court of Appeals would not mean that a panel decision, no matter how wrong, would be forever binding. If there is "flagrant error or mistake" in a panel decision, *see Selected Risks Insurance Co. v. Dean,* 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987), the error or mistake may be corrected through the en banc hearing process. Code § 17-116.02(D) provides in pertinent part:

> The Court [of Appeals] may sit en banc upon its own motion at any time, in any case in which a majority of the Court determines it is appropriate to do so. The Court sitting en banc shall consider and decide the case and may overrule any previous decision by any panel or of the full Court.

We decided on April 20, 1990, that Burns' case "is of such imperative importance as to justify the deviation from normal appellate practice." Code § 17-116.06(B)(1). Accordingly, on our own motion, we certified the case for review.

It was stipulated below that Burns was arrested for distributing cocaine at 8:45 p.m. on Friday, October 13, 1989, on public property in the 3600 Block of Mt. Vernon Avenue in the City of Alexandria. For purposes of Burns' motion to dismiss, it was agreed that the drug transaction took place within 1,000 feet of a school, that school was not in session at the time, and that no juveniles were involved in the transaction. Evidence introduced by Burns showed that 39 percent of the area within the city was included in the drug-free zones created by Code § 18.2-255.2.

In granting the motion to dismiss, the trial court stressed the fact that school was not in session at the time the drug transaction occurred, that no school-related activities were taking place, and

that no children viewed the transaction. Hence, the court concluded, "[n]o harm to children [was] shown" as a result of the transaction.

The court opined that, while the 1,000-foot extension of the drug-free zone "is an appropriate exercise of legislative authority, . . . irrational consequences [would] occur" if Code § 18.2-255.2 were applied to the facts of this case. Then, citing *Crenshaw v. Commonwealth*, 219 Va. 38, 245 S.E.2d 243 (1978), the court held that because "it is not a defense [under Code § 18.2-255.2] that no children nor school property were affected by the [drug transaction]," the Code section creates an irrebuttable presumption "violative of due process guarantees." Accordingly, the court found "the 1,000 foot extension unconstitutional as applied" to Burns.

On appeal, the Commonwealth contends that the trial court's reasoning "was fundamentally flawed in two ways." First, the Commonwealth states, "the court's reliance on *Crenshaw v. Commonwealth* was misplaced." Second, the Commonwealth says, "applying the 'Drug-Free Zone Act' to drug sales at all times when done within 1,000 feet of a school *is* rationally related to the harm the General Assembly sought to [re]dress."

On the other hand, Burns argues that *Crenshaw* is controlling and adopts as her argument the trial court's rationale that Code § 18.2-255.2 creates an impermissible irrebuttable presumption. Burns says *Crenshaw* requires that in determining the validity of an evidentiary presumption created by statute, there must be a rational connection between the fact proved and the ultimate fact presumed, else the presumption will be "applied as a purely arbitrary mandate, violative of due process." 219 Va. at 43, 245 S.E.2d at 247.

Burns argues there is no rational connection between the fact proved in this case, *viz.*, that a drug transaction occurred within 1,000 feet of a school, and the fact presumed, *viz.*, that "all drug violations occurring within a drug free zone are *per se* harmful to children." Hence, Burns concludes, the presumption has been applied in her case as a purely arbitrary mandate within the meaning of *Crenshaw* and must not be allowed to stand.

We do not agree that *Crenshaw* controls the disposition of this case. There, we interpreted Code § 46.1-198.1, which made it unlawful, *inter alia*, to operate a motor vehicle "equipped with" a radar detector. The statute provided:

The presence of any such prohibited device or mechanism in or upon a motor vehicle upon the highways of this State shall constitute prima facie evidence of the violation of this section. The Commonwealth need not prove that the device in question was in an operative condition or being operated.

We stated that "if we were confronted with only the first sentence" in the foregoing paragraph, "we would have no difficulty upholding the statutory presumption, as applied to an 'equipped with' violation." 219 Va. at 42, 245 S.E.2d at 246. We stated further, however, that "the effect of the second sentence, when read with the paragraph as a whole, is to exclude from consideration any evidence concerning 'operative condition' and, thus, for all practical purposes, to render irrebuttable the presumption created by the first sentence." *Id.*

We noted that the paragraph, as a whole, "permits an 'equipped with' conviction upon proof of the mere presence of a 'radar detector in' or upon a motor vehicle, despite credible evidence that the device was inaccessible or unavailable for use." *Id.* at 43, 245 S.E.2d at 247 (footnote omitted). We held that because there was not a natural and rational evidentiary connection between the fact proved and the ultimate fact presumed, we could not "allow the presumption to stand." *Id.*

█ The statute involved here, however, creates no presumptions. Rather, the statute creates a "separate and distinct felony," with additional punishment. The offense thus created reflects the General Assembly's concern about the aggravated nature of drug transactions involving children. The aggravating factor, *viz.*, a drug transaction occurring within 1,000 feet of a school, is incorporated into the offense. Implicit in that incorporation is the legislative finding, as a matter of substance and not of presumption, that such transactions are the cause of harm to children.[4] *See United States* v. *Thornton*, 901 F.2d 738, 740 (9th Cir. 1990); *United States* v. *Holland*, 810 F.2d 1215, 1221 (D.C. Cir. 1987), *cert. denied*, 481 U.S. 1057 (1987).

The trial court, however, limited the application of Code § 18.2-255.2 to drug transactions that cause only direct harm to children. The court found that the purpose of the statute is con-

---

[4] We would reach the same result even if we were to agree that Code § 18.2-255.2 creates the presumption Burns says it creates, *viz.*, that all drug violations occurring within a drug-free zone are *per se* harmful to children.

fined to preventing "the harm that occurs to children by having drug transactions take place *within their view or in their presence.*" (Emphasis added.)

■ In this respect, we think the trial court misperceived the scope of the statute's application. In our opinion, also implicit in the General Assembly's enactment of Code § 18.2-255.2 is the legislative finding that the *threat* of harm to children is present whether or not school is in session, school-related activities are being held, or children are present when drug transactions take place within 1,000 feet of a school. By its finding, the General Assembly has settled once and for all that such drug transactions do cause harm to children, whether or not children are present when the transactions take place.

Similar legislative findings regularly underlie the creation of criminal offenses. For example, when the General Assembly created the offense of driving under the influence, it necessarily found that every intoxicated person poses a threat of harm whenever and wherever he or she operates a motor vehicle, whether or not someone is killed or injured or property is damaged. No one could seriously question the General Assembly's authority to make that finding. Yet, if Burns' view of the matter were adopted, it would be necessary in a prosecution for driving under the influence to show that the accused injured or killed someone or caused damage to property in order to obtain a conviction. That would be an unrealistic view, one frustrating the very purpose of the drunken driving statute and, if applied here, would have the same effect upon the Drug-Free Zone Act.

■ We do not think, therefore, that anyone could seriously question the authority of the General Assembly to make the legislative finding in question here, *viz.*, that drug transactions occurring within 1,000 feet of a school do pose a threat of harm to children regardless of when the transactions take place or whether children are present. Nor can there be any question that this latter conclusion is rationally related to the Commonwealth's interest in protecting children from such threatened harm. As the district judge stated in *United States v. Nieves*, 608 F. Supp. 1147 (S.D.N.Y. 1985), in rejecting a due process attack against the

federal drug-free zone statute, 21 U.S.C. § 845a,[5] on the ground it was not rationally related to a legitimate government interest:

> Whether or not a child is involved in or otherwise present during any particular sale of narcotics within one thousand feet of a school, subjecting the seller to enhanced penalties reasonably may be expected to deter the seller and other illicit dealers from conducting their operations near school property in the future. In such areas, where children congregate in large numbers before, during, and after school sessions, they are readily subject to the illicit activities of those who ply narcotics to the victims of drug abuse and addiction. . . . Indeed, judicial notice may be taken of the destructive results of drug addiction, the source of which Congress clearly intended to keep out of the easy reach of school-age children. It is difficult to imagine a more rational way of keeping drug traffickers out of areas where children are more likely to come into contact with them than to subject [drug traffickers] to a risk of stiffer penalties for doing business near school property.

*Id.* at 1149-50 (footnote omitted).

The *Nieves* court is not alone in its rejection of a due process attack against the federal drug-free zone statute. Similar attacks have been consistently rejected by other federal courts. *United States* v. *Cross*, ___ F.2d ___, ___ (6th Cir. 1990); *Thornton*, 901 F.2d at 740; *Holland*, 810 F.2d at 1222; *United States* v. *Falu*, 776 F.2d 46, 49 (2d Cir. 1985); *United States* v. *Agilar*, 779 F.2d 123, 125-26 (2d Cir. 1985), *cert. denied*, 475 U.S. 1068 (1986); *United States* v. *Cunningham*, 615 F. Supp. 519, 521 (S.D.N.Y. 1985).

State drug-free zone statutes have also been consistently upheld against due process challenges. *State* v. *Moore*, 782 P.2d 497, 502 (Utah 1989); *State* v. *Burch*, 545 So. 2d 279, 282-83 (Fla. Dist. Ct. App. 1989); *State* v. *Ogar*, 229 N.J.Super. 459, 469-70, 551 A.2d 1037, 1043 (App. Div. 1989).

Accordingly, we hold that the trial court erred in dismissing count two of the indictment against Burns. For this error, we will

---

[5] 21 U.S.C. § 845a does not create a separate offense, as does Va. Code § 18.2-255.2, but provides for enhanced penalties for selling narcotics in a drug-free zone.

reverse the order appealed from, reinstate count two, and remand the case to the trial court for further proceedings.

*Reversed and remanded.*