WILLIAM WALKER *vs.* GEORGETOWN HOUSING AUTHORITY & another.[1]

Essex. December 3, 1996. - April 8, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.

*Practice, Civil,* Standing, Summary judgment, Attorney's fees. *Constitutional Law,* Standing, Freedom of speech and press. *Civil Rights,* Attorney's fees. *Housing Authority.*

In an action seeking a declaratory judgment and injunctive relief, summary judgment was properly entered where there was no genuine dispute of material fact. [673-674]

A housing authority's prohibition of door-to-door political campaigning and soliciting in the authority's State-assisted public housing development for the elderly and disabled violated its tenants' rights under the First Amendment to the Constitution of the United States and art. 16, as amended by art. 77 of the Amendments, of the Massachusetts Declaration of Rights. [674-676]

In a civil action in which the plaintiff prevailed and obtained declaratory and injunctive relief to enforce his constitutional rights, the judge rightly awarded the plaintiff his attorney's fees under 42 U.S.C. § 1988. [677]

CIVIL ACTION commenced in the Northeast Division of the Housing Court Department on December 8, 1992.

The case was heard by *David D. Kerman,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Martin J. Rooney* for the defendants.

*Ernest Winsor (William M. Brainard & James Breslauer* with him) for the plaintiff.

WILKINS, C.J. The plaintiff, William Walker, is a tenant of the defendant Georgetown Housing Authority's (authority's)

---

[1]Marilyn Handren, executive director of the Georgetown Housing Authority, was dismissed as a defendant. Apparently her successor, Patricia Fyfe, has been substituted as a defendant.

State-assisted public housing development for the elderly and disabled, known as the Trestle Way development. He challenges the authority's limitation on door-to-door campaigning and soliciting at the development.[2] He asserts that the authority's prohibition of door-to-door political campaigning and soliciting violates the constitutional rights of tenants to campaign and solicit, to receive information, and to determine for themselves whom they will receive as visitors.

We recite facts pleaded in the amended complaint and admitted in the defendants' answer. Walker ran as a candidate for the authority's governing board (board) in a town election held in May, 1992. Approximately six weeks before the election, Marilyn Handren, then the authority's executive director, sent Walker a letter stating that the authority did not allow door-to-door campaigning. Walker then spoke with Handren who affirmed that it was the policy of the authority that no one may engage in door-to-door campaigning and that Walker must cease campaigning on authority property.[3] In late April, 1992, Walker's counsel demanded in writing that the authority rescind its policy banning door-to-door campaigning on its premises. Early in May, Handren orally informed Walker and another tenant, who was also a candidate for a position on the board, that they had a right as tenants to campaign door to door in the authority's development.[4] Walker's counsel agreed to forgo commencing an action if the authority would rescind its policy concerning political campaigning at its next meeting. On May 13, 1992, the

[2]The Trestle Way development has 126 dwelling units in seventeen brick apartment buildings on four streets. Eighteen of the apartments, including that of the plaintiff, have separate entrances at ground level directly accessible from a sidewalk in the development. All other apartments are accessible through a common entry shared with other apartments. The record shows that the doors to the common entrances are not kept locked. The authority owns the streets and sidewalks within the development. The town of Georgetown removes snow from the streets and provides police and fire protection to the development. This case does not involve an asserted right to pass through common entrances that are kept locked.

[3]The contradictory statement in an affidavit that the authority exempted tenants from the policy against door-to-door solicitation and campaigning, signed after this action was commenced and the defendant's answer was filed, does not override the admission to the contrary in the authority's answer.

[4]Other candidates for local election were informed in writing that the authority did not allow door-to-door campaigning.

board rescinded its policy against campaigning and solicitation on the authority's premises.

At the authority's next meeting, however, held on June 10, 1992, the board voted to revoke its May 13 vote and to reinstate the policy against all campaigning and all solicitation.[5] That policy was in effect when this action was commenced on December 8, 1992, and when the plaintiff's amended complaint was filed on April 27, 1993.

A judge in the Northeast Division of the Housing Court Department allowed the plaintiff's motion for summary judgment. He entered an order enjoining the authority from "prohibiting or interfering with political and religious door-to-door campaigning on the streets and sidewalks outdoor areas of its property."[6] The order was based on his conclusion that the authority's practice violated (a) the First Amendment to the Constitution of the United States and (b) art. 16 of the Massachusetts Declaration of Rights, as amended by art. 77 of the Amendments (free speech); and art. 9 (right of free elections) of the Massachusetts Declaration of Rights. Subsequently, the judge allowed the plaintiff's motion for summary judgment on a count that alleged a violation of 42 U.S.C. § 1983 (1994), and, the plaintiff having waived any claim for money damages, the judge awarded the plaintiff attorney's fees under 42 U.S.C. § 1988 (1994). A declaratory judgment, an injunction, and an award of attorney's fees were accordingly contained in a final judgment from which the authority has appealed. We transferred the appeal here on our own motion.

1. There was no genuine dispute of material fact that barred the entry of summary judgment. The order permitting door-to-door solicitation for political purposes encompasses tenants as well as others. In any event, the dispute as to whether the authority's antisolicitation and anticampaigning policy includes tenants (raised by the authority's belated shift of po-

---

[5]The summary judgment record shows that the board appears to have acted in response to tenants' concerns about safety, privacy, and peace and quiet.

[6]The plaintiff's amended complaint did not raise any question concerning religious solicitation door to door. The authority agrees that its prohibition includes religious solicitation and makes no separate argument that references to religious door-to-door campaigning should be deleted from the judgment.

sition to exempt tenants from the policy) presents no material disagreement. Certainly, a tenant has at least the same rights as a nontenant.[7] Walker has standing to raise the violation of the First Amendment rights of nontenants. *Broadrick* v. *Oklahoma*, 413 U.S. 601, 612 (1973).

2. The authority's policy barring all door-to-door campaigning and solicitation cannot survive the plaintiff's constitutional challenge based on the First Amendment and cognate provisions of the Massachusetts Declaration of Rights. It is clear that, if a municipality adopted such a ban applicable to all door-to-door campaigning and solicitation, the municipal regulation could not survive constitutional challenge. We reject the authority's claim that its streets and sidewalks and the doorways of its apartment buildings are not areas to which the same rights apply. There is nothing in the summary judgment record that justifies broad limitations on the use of the authority's publicly owned streets and sidewalks for campaigning or soliciting.

The Supreme Court's position on local regulations banning door-to-door campaigning and solicitation leaves no room for doubt. "Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved." *Martin* v. *Struthers*, 319 U.S. 141, 146-147 (1943). See *Schaumburg* v. *Citizens for a Better Env't*, 444 U.S. 620, 628-632 (1980) (reviewing cases); *Schneider* v. *State*, 308 U.S. 147, 162 (1939). See also *Planned Parenthood League of Mass., Inc.* v. *Attorney Gen.*, 391 Mass. 709, 712-714, cert. denied, 469 U.S. 858 (1984); *Kenyon* v. *Chicopee*, 320 Mass. 528, 531 (1946). "For centuries it has been a common practice in this and other countries for persons not specifically invited to go from home to home and knock on doors or ring doorbells to communicate ideas to the occupants or to invite them to political, religious, or other kinds of pub-

---

[7]The injunction against prohibiting or interfering with "door-to-door campaigning on the streets and sidewalks outdoor areas" of the authority's property could be expressed more artfully. The words "outdoor areas" seem redundant, but the authority raises no objection in this respect to the form of the injunction or declaration of right.

This case presents no question directly concerning political campaigning or soliciting signatures for political purposes on the sidewalks and streets of the development themselves but not door to door.

lic meetings. Whether such visiting shall be permitted has in general been deemed to depend upon the will of the individual master of each household, and not upon the determination of the community." *Martin* v. *Struthers, supra* at 141.

The authority's principal argument is that areas at the thresholds of apartments in the Trestle Way development are not a "public forum" and, therefore, the cases just cited do not apply. The authority claims that the entire development is a "nonpublic forum" in which restrictions need only be reasonable. See *Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) ("Public property which is not by tradition or designation a forum for public communication is governed by different standards"). The *Perry Educ. Ass'n* case, however, did not involve access to people's homes, but rather the right of access to a school district's interschool mail system. See *International Soc'y for Krishna Consciousness, Inc.* v. *Lee*, 505 U.S. 672 (1992) (airport terminal not public forum; ban on solicitation need meet only reasonableness standard).[8] The authority's argument relies on cases that involve areas that have not historically been considered public forums.

We need not decide whether we would find the Supreme Court's public, nonpublic, and limited public forum classifications instructive in resolving free speech rights under our Declaration of Rights.[9] In any event, the streets and sidewalks of the development used as access to the entrances to the apartments fall squarely within the classification of a public

[8]"Activities such as leafleting and solicitation are by tradition and function so closely linked with free expression that the Court has properly scrutinized restrictions upon those activities with special care, without pausing to establish at the outset that the restrictions operate in a public forum. Instead, the approach has been to presume a need for strict scrutiny unless a peculiarly *non*-public forum is involved" (emphasis in original) (footnotes omitted). L.H. Tribe, American Constitutional Law § 12-24, at 988 (2d ed. 1988).

[9]There is concern about these classifications. See *International Soc'y for Krishna Consciousness, Inc.* v. *Lee*, 505 U.S. 672, 693-695 (1992) (Kennedy, J., concurring). Because the cases "suggest that the Court uses 'public forum' talk to signal conclusions it has reached on other grounds, it might be considerably more helpful if the Court were to focus more directly and explicitly on the degree to which the regulation at issue impinges on the first amendment interest in the free flow of information." L.H. Tribe, American Constitutional Law, *supra* at § 12-24, at 993.

forum. The *Perry Educ. Ass'n* opinion itself acknowledged that streets and sidewalks are quintessential public forums. *Perry Educ. Ass'n* v. *Perry Local Educators' Ass'n, supra* at 45. See also *Frisby* v. *Schultz,* 487 U.S. 474, 480 (1988); *Hague* v. *Committee for Indus. Org.,* 307 U.S. 496, 515 (1939).

The principles we first set forth have been applied to a government owned and operated village (*Tucker* v. *Texas,* 326 U.S. 517 [1946]) and even to a company town (*Marsh* v. *Alabama,* 326 U.S. 501 [1946]). "Whether a corporation or a municipality owns or possesses the town the public in either case has an identical interest in the functioning of the community in such manner that the channels of communication remain free." *Id.* at 507. "Certainly neither Congress nor Federal agencies acting pursuant to Congressional authorization [nor, we add, a local housing authority] may abridge the freedom of press and religion safeguarded by the First Amendment." *Tucker* v. *Texas, supra* at 520.

The authority is a public entity. Its property is publicly owned. There is no apparent distinction between its streets and sidewalks and those of a private development. A technical distinction that its ways are not accepted public ways but rather appear to be private ways open to the public makes no difference. The constitutional right of the authority's tenants to receive communications may not be abridged by the blanket prohibition of campaigning and solicitation.[10]

3. We need add little concerning the plaintiff's challenges to the authority's policy based on the Constitution of the Commonwealth. The views we have expressed in the first portion of this opinion are our independent views of rights expressed in the Constitution of the Commonwealth, as well

[10]Our conclusion is not disturbed by the view expressed in *Daniel* v. *Tampa,* 38 F.3d 546 (11th Cir. 1994), cert. denied, 515 U.S. 1132 (1995), that the housing authority's property in that case was a nonpublic forum. *Id.* at 550. There was a significant public safety threat ("rampant drug and crime problems") in the property involved in the *Daniel* case and, as a result, access to the property had been limited to residents, invited guests of residents, and those conducting official business. *Id.* The authority in our case has offered no public safety justification for its policy. Moreover, the reasoning of the court in the *Daniel* case is questionable. It seems that, because the authority had limited access to its property, the court concluded that the property was not a public forum. *Id.* The proper question, it seems to us, was whether the authority had a right to limit access in the first place.

as our understanding of the position of the Supreme Court of the United States. We need not discuss the plaintiff's separate argument that the authority's denial of access to its tenants by persons seeking to solicit signatures in connection with access to the ballot, and to distribute associated material, violates art. 9.

4. Because the plaintiff, by obtaining an injunction to enforce his constitutional rights, prevailed significantly on his constitutional claims (even though he waived any claim for monetary damages), the judge rightly awarded him attorney's fees under 42 U.S.C. § 1988. See *Hensley* v. *Eckerhart*, 461 U.S. 424, 433 (1983). In determining the award, the judge properly excluded counsel's time attributable to unrelated issues on which the plaintiff did not prevail. *Id.* at 440. The allowance of attorney's fees and costs on this appeal will be for a single justice. See *Yorke Mgt.* v. *Castro*, 406 Mass. 17, 20 (1989).

5. The judgment is affirmed. A single justice shall decide the amount of attorney's fees to be awarded on appeal.

*So ordered.*