COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Lemons and Senior Judge Hodges
Argued at Alexandria, Virginia


KEITH OSBORNE COLLINS

v.   Record No. 3086-97-4

COMMONWEALTH OF VIRGINIA                    OPINION BY
                                  JUDGE ROSEMARIE ANNUNZIATA
KEITH OSBORNE COLLINS                     AUGUST 10, 1999

v.   Record No. 3087-97-4

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                     Thomas D. Horne, Judge


CHRISTIAN DANTE BLAYLOCK

v.   Record No. 0062-98-4

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                   Carleton Penn, Judge Designate

        Bonnie H. Hoffman, Assistant Public Defender
        (Office of the Public Defender, on briefs),
        for appellants.

        Eugene Murphy, Assistant Attorney General
        (Mark L. Earley, Attorney General, on
        briefs), for appellee.


    In each of these cases, appellants were convicted under

Code § 18.2-119 of trespassing.  On appeal, appellants contend:

1) the police had no lawful authority, as agents of the manager

of a public housing complex, to issue them a trespass notice, and 2) the process whereby they were barred from re-entering such complex violated their constitutional right to due process. We find no merit in appellants' arguments and affirm the convictions.

I.

FACTUAL BACKGROUND

On June 29, 1995, the management of Loudoun House Apartments, a federally-subsidized apartment complex, issued a limited power of attorney appointing "each and every sworn officer of the Leesburg Police Department as [its] true and lawful attorneys-in-fact." This power of attorney authorized the Leesburg officers to "serve trespass notices to any persons encountered on Loudoun House property who are not on a lease and cannot demonstrate a legitimate purpose for being on the premises." Additionally, the officers were authorized to file criminal complaints for trespass against persons who returned to the Loudoun House premises after being served with a notice.

On January 14, 1997, Officer Eric Paul of the Leesburg Police Department barred Keith Osborne Collins pursuant to the power of attorney. Police filled out a trespass notice, read it to appellant and explained its significance. The notice consisted of a one-page form providing that the management of Loudoun House has given "permission to the officers of the Leesburg Police Department to issue trespass notices and enforce

-

subsequent trespass violations."  The notice further provided that appellant was no longer permitted to enter the Loudoun House property "under any circumstances" and would be subject to arrest for trespass if he returned.  Appellant signed the notice but was not given a copy, as was the customary practice.

On April 10, 1997, Officer Paul and Officer Michael Buracker observed appellant Collins walking into Building 15 on the premises of Loudoun House.  The officers followed appellant Collins into the building and found him in the living room of one of its apartments, whereupon they arrested him for trespassing in violation of Code § 18.2-119.[1]  On April 14, 1997, police again arrested appellant Collins for trespass after observing him entering a motor vehicle on the premises of Loudoun House.

On July 2, 1996, Officer Paul barred Christian Dante Blaylock by filling out and reading a trespass notice to him in similar fashion.  The notice is identical to the form used in appellant Collins' case.  Appellant Blaylock signed this notice. On June 13, 1997, appellant Blaylock walked around the grounds of Loudoun House for at least fifteen to twenty minutes at

---

[1] "If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof . . . he shall be guilty of a Class 1 misdemeanor."  Code § 18.2-119.

-

10:30 p.m. and talked to various people.  Loudoun County police arrested appellant that night for trespass.

Before trial, appellants moved the court to exclude evidence concerning the reasons for which Leesburg police officers issued the barment notices.  In each case, the court granted appellants' motions but also granted the Commonwealth leave to introduce such evidence if appellants challenged the validity of the barment.

Appellants also filed pretrial motions to dismiss on the grounds that the trespass notice violated Dillon's Rule and that the barment process violated their constitutional right to due process.  The trial court denied each motion after holding pretrial hearings.  At the close of evidence at their jury trials, appellants renewed these motions as motions to strike or, in the alternative, to suppress the trespass notice.  The court also denied these motions.  In appellant Blaylock's case, the court cited the historical roots of Code § 15.1-138 to find that it did not prohibit police from serving trespass notices.[2]

At trial, appellants presented no evidence concerning their purpose for being on the premises of Loudoun House when they were initially served with a trespass notice and subsequently

---

[2] In addition to the two challenges on appeal noted above, appellant Blaylock also contends the trial court erred in considering the legislative intent and history of Code § 15.1-138 to reach its decision because the statute is clear and unambiguous on its face.  For reasons set forth below, we hold that such error, even if shown, is harmless in light of our decision in Holland v. Commonwealth, 28 Va. App. 67, 502 S.E.2d 145 (1998).

-

arrested for trespassing.  The court found each appellant guilty of trespassing in violation of Code § 18.2-119.

II.

ANALYSIS

A.  VALIDITY OF POLICE AUTHORITY TO ISSUE TRESPASS NOTICES

Appellants first contend the police lacked lawful authority to issue the trespass notices.  Appellants contend the police acted in their law enforcement capacity when barring individuals, that such activity is a civil matter, and that Code § 15.1-138 expressly precludes police authority over such civil matters.

At the time of appellant's arrest, Code § 15.1-138 provided:

> The officers and privates constituting the police force of counties, cities and towns of the Commonwealth are hereby invested with all the power and authority which formerly belonged to the office of constable at common law in taking cognizance of, and in enforcing the criminal laws of the Commonwealth and the ordinances and regulations of the county, city or town, respectively, for which they are appointed or elected.  Each policeman shall endeavor to prevent the commission within the county, city or town of offenses against the law of the Commonwealth and against the ordinances and regulations of the county, city or town; shall observe and enforce all such laws, ordinances and regulations; shall detect and arrest offenders against the same; and shall secure the inhabitants thereof from violence and the property therein from injury.
> Such policemen shall have no power or authority in civil matters . . . .

-

Although this section has been repealed, it was still in effect at the time of appellants' arrests.

The issue raised in this appeal has been settled by our decision in Holland v. Commonwealth, 28 Va. App. 67, 502 S.E.2d 145 (1998). That case likewise concerned the Loudoun House's grant of a power of attorney to the Leesburg Police Department. Id. at 68-69, 502 S.E.2d at 145-46. As in this case, Holland was convicted of trespassing for entering the premises of Loudoun House after officers of the Leesburg Police Department issued him a trespass notice. Id. at 69-70, 502 S.E.2d at 146. In Holland, we held that the power of police to bar individuals pursuant to an ongoing request for assistance is necessarily implied in the powers expressly granted by Code § 15.1-138. Id. at 75, 502 S.E.2d at 149.

Appellants do not attempt to distinguish Holland; rather, appellants ask that we overturn it. We decline to do so.

We are not at liberty to ignore the decision of a previous panel. Commonwealth v. Burns, 240 Va. 171, 173-74, 395 S.E.2d 456, 457 (1990). See In re Baskins, 16 Va. App. 241, 245, 430 S.E.2d 555, 558 (1993), judgment reversed by, 247 Va. 506, 442 S.E.2d 636 (1994) ("[W]e are bound by the decision of a prior panel of this Court."); Robinson v. Commonwealth, 13 Va. App. 540, 543, 413 S.E.2d 661, 662 (1992) ("Under the rule of stare decisis, a decision by a panel of this court is an established precedent."). If a panel decision contains a "flagrant error or

-

mistake," it may be corrected through the en banc hearing process.  Burns, 240 Va. at 174, 395 S.E.2d at 457.  Code § 17.1-402(D), recodifying Code § 17-116.02(D), allows this Court to sit en banc:

> upon its own motion at any time, in any case in which a majority of the Court determines it is appropriate to do so.  The Court sitting en banc shall consider and decide the case and may overrule any previous decision by any panel or of the full Court.

In Holland, we denied the defendant's petition for a rehearing en banc on September 1, 1998.  Thus, the holding of Holland remains dispositive.

### B.  CONSTITUTIONAL CLAIM

Appellants next argue that their trespass notices were issued in violation of the United States Constitution and, therefore, cannot support their conviction under Code § 18.2-119.  Appellants argue that individuals indefinitely barred from the Loudoun House premises are denied their First Amendment freedom of association and that the procedure followed by the Leesburg police in issuing trespass notices violates their constitutional right to due process.  Assuming without deciding that the issuance of a trespass notice by city police pursuant to the authority given them by the property owner constitutes state action, we find no merit in appellants' argument.

-

"The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty or property without due process of law."  Jackson v. W., 14 Va. App. 391, 405, 419 S.E.2d 385, 393 (1992).  "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."  Carey v. Piphus, 435 U.S. 247, 259 (1978).  Due process analysis consists of two steps.  See Klimko v. Virginia Employment Comm'n, 216 Va. 750, 754, 222 S.E.2d 559, 563, cert. denied, 429 U.S. 849 (1976).  First, a deprivation of a liberty or property interest must be demonstrated.  See J.P. v. Carter, 24 Va. App. 707, 715, 485 S.E.2d 162, 167 (1997).  Then, "'[o]nce it is determined that due process applies, the question remains what process is due.'"  Id. (quoting Jackson, 14 Va. App. at 406, 419 S.E.2d at 393-94).

While the First Amendment does not, by its terms, protect a "right of association," the United States Supreme Court has recognized such a right in certain circumstances.  Dallas v. Stanglin, 490 U.S. 19, 23-24 (1989).  In Roberts v. United States Jaycees, 468 U.S. 609 (1984), the Court defined the right at issue as follows:

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses.  In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State

-

> because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment -- speech, assembly, petition for redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

Id. at 617-18. The Court refers to these two categories of protected associations as "intimate association" and "expressive association," respectively. Id. at 618. In this case, appellants failed to show how their barment from the premises of Loudoun House deprives them of their First Amendment freedom of association under either formulation of the right.

There can be no doubt that expressive free association is an aspect of liberty protected by the Fourteenth Amendment. See Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 214 (1986) ("'It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment . . . .'" (quoting NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460 (1958))); Bates v. Little Rock, 361 U.S. 516, 523 (1960). However, the Supreme Court recognizes the freedom of expressive association as a means of giving full effect to other individual liberties.

-

Roberts, 468 U.S at 622.  The Constitution does not "recognize[]

a generalized right of 'social association.'"  Stanglin, 490

U.S. at 25 (holding that encounters among patrons of dance halls

do not "involve the sort of expressive association that the

First Amendment has been held to protect").

The liberty interest in intimate association is rooted in

the necessity of affording:

> certain kinds of highly personal
> relationships a substantial measure of
> sanctuary from unjustified interference by
> the State. . . . [T]he constitutional
> shelter afforded such relationships reflects
> the realization that individuals draw much
> of their emotional enrichment from close
> ties with others.  Protecting these
> relationships from unwarranted state
> interference therefore safeguards the
> ability independently to define one's
> identity that is central to any concept of
> liberty.

Roberts, 468 U.S. at 618-19 (citations omitted).  Among the

personal affiliations that have been deemed to merit such

constitutional protection are those that attend the creation and

sustenance of a family, such as marriage, childbirth, the

raising and education of children, and cohabitation with one's

relatives.  See, e.g., Zablocki v. Rehail, 434 U.S. 374, 383-86

(1978); Carey v. Population Services International, 431 U.S.

678, 684-86 (1977); Smith v. Organization of Foster Families,

431 U.S. 816, 842-44 (1977).

Here, appellants failed to present facts demonstrating that

their interest in gaining access to the premises of Loudoun

-

House implicates an interest protected by the First Amendment right of association. Indeed, during and before trial, appellants successfully moved to exclude the introduction of evidence pertaining to the circumstances under which police issued trespass notices barring them from the property and the prosecution's case was confined to showing the conduct which constituted the offense. As such, we find no basis for concluding that the police action at issue here deprived appellants of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

Accordingly, we affirm appellants' convictions.

<u>Affirmed.</u>