FITZPATRICK, Chief Judge.
On October 17, 2000, a panel of this Court affirmed the trespass conviction of Kevin Lamont Hicks (appellant). See Hicks v. Commonwealth, 33 Va.App. 561, 535 S.E.2d 678 (2000). Appellant’s petition for rehearing en banc was granted and the mandate of the October 17, 2000 opinion was stayed. See Hicks v. Commonwealth, 34 Va.App. 42, 537 S.E.2d 616 (2000). Appellant contends the trial court erred in (1) denying his motion to dismiss the prosecution on the grounds that the barment-trespass procedure violated his First and Fourteenth Amendment rights and (2) denying his motion to remand the case to the general district court for trial before a different judge of that court and require the *52 Commonwealth’s attorney to prosecute the case. Upon rehearing en banc, we hold that the barment-trespass procedure employed by the City of Richmond in the instant case violates the First and Fourteenth Amendments to the United States Constitution and, thus, we reverse and dismiss the trial court’s conviction of appellant. The mandate of the October 17, 2000 opinion is hereby vacated.
I.
Whitcomb Court is a housing project owned by the Rich,mond Redevelopment and Housing Authority (RRHA). RRHA sought to “privatize” the streets surrounding and adjacent to the Whitcomb Court housing project in an effort to make the community safer.[1] On June 23, 1997 the City of Richmond adopted ordinance No. 97-181-197 deeding the streets surrounding Whitcomb Court to RRHA. The ordinance provided:
§ 1. That Carmine Street, Bethel Street, Ambrose Street, Deforrest Street, the 2100-2300 Block of Sussex Street and the 2700-2800 Block of Magnolia Street in Whitcomb Court ... be and are hereby closed to public use and travel and abandoned as streets of the City of Richmond.
§ 3. The City shall retain a full width utility easement in the streets proposed to be closed by this ordinance----
*53 § 4. The City shall retain a full width right of way maintenance easement in the streets proposed to be closed by this ordinance.
§ 5. That the aforesaid streets shall be designated as public highways for law enforcement purposes____
The streets deeded to Whitcomb Court at issue here were those streets surrounding and adjacent to the property owned by RRHA, not those contained within Whitcomb Court. Prior to “privatization,” these streets were similar to all other streets in Richmond. After the streets were deeded to RRHA, red and white “private property, no trespass” signs were posted throughout Whitcomb Court and every “hundred feet on each block,” informing the public that “these streets are privatized and all the property is privatized, no trespass.” The signs were “approximately 18 inches to almost 24 inches by about 12 inches.” However, the streets were not gated, barricaded, or otherwise closed or restricted only to Whitcomb Court traffic. The streets remained open to vehicular traffic, and the sidewalks were open to access by the public.
After the streets were deeded to RRHA, RRHA adopted a barment-trespass procedure to prevent any “unauthorized persons” from entering the property. On November 13, 1998 the RRHA’s Director of Housing Operations authorized
each and every sworn officer of the Richmond Police Department to enforce the trespass laws of the Commonwealth of Virginia ... [upon RRHA property known as] Whitcomb Court.... [E]ach and every Richmond Police Department officer [is authorized] to serve notice, either orally or in writing, to any person [found on RRHA property] when such person is not a resident, employee, or such person cannot demonstrate a legitimate business or social purpose for being on the premises.
According to a printed brochure issued by RRHA to the Whitcomb Court residents, “unauthorized persons,” who are subject to the barment proceedings, are all non-residents who cannot demonstrate that they are on the premises “visiting a *54 lawfully residing resident, or on the development conducting legitimate business.”
The police officer makes the determination whether a person is to be barred, determines whether the person is a. tenant or is there at the invitation of a tenant, or whether there is a legitimate reason for being on the property. A person simply has to fail to fit within the category of people whom RRHA has deemed entitled to be on the streets and sidewalks adjacent to the public housing development to be barred. Once barred, the person who returns is a trespasser without regard to whether, on that subsequent occasion, he or she is there on legitimate business or at the invitation of a Whitcomb Court tenant.
Hicks was convicted of trespassing on the property of Whitcomb Court on February 10, 1998 and June 26, 1998, respectively, and of damaging property in Whitcomb Court on April 27, 1998.[2] On April 14, 1998, Mrs. Gloria Rogers, the housing manager at Whitcomb Court,- served a written notice on Hicks advising him that he was banned from the Whitcomb Court property. He was “not to trespass on RRHA property,” and if he was “seen or caught on the premises, [he would] be subject to arrest by the police.” Hicks’ mother, his baby, and his baby’s mother live at Whitcomb Court. After receiving the notice, Hicks twice returned to Whitcomb Court to speak with Mrs. Rogers to seek permission to come back on the property. His requests were denied. On January 20, 1999, Officer James Laino (Laino) observed Hicks walking westbound in the 2800 block of Bethel Street, one of the “privatized” streets adjacent to Whitcomb Court. Laino knew that Hicks was barred from the property. Hicks explained to Laino that he was on the property “bringing pampers to his baby.” During the conversation, a female came out and approached Laino and Hicks. Hicks indicated he was visiting her. Laino issued Hicks a summons for trespassing.
*55 Hicks was tried in the general district court without the presence of a Commonwealth’s attorney. The district court judge conducted the questioning of Hicks. Hicks objected to this procedure. The judge struck Hicks’ testimony at the end of the trial and convicted him. Hicks noted an appeal to the circuit court.
Prior to trial in the circuit court, Hicks filed a motion requesting a remand to the general district court for a new trial and an order requiring a Commonwealth’s attorney to be present and to represent the Commonwealth at this new general district court trial. The circuit court denied the motion on the ground that it lacked authority to remand the trial. Hicks also moved to dismiss the charge of trespass on the ground that the RRHA’s trespass policy violated the First and Fourteenth Amendments to the United States Constitution. The circuit court denied his motion to dismiss and found Hicks guilty of trespass.
II. CONSTITUTIONALITY OF RICHMOND ORDINANCE
Appellant argues that Richmond City Ordinance No. 97-181-197 and the RRHA barment-trespass procedure violate the First and Fourteenth Amendments of the United States Constitution.[3] Thus, we must determine whether the First and Fourteenth Amendments are violated by the trespass statute as enforced under authority granted by RRHA to Richmond City police officers to bar people on the streets *56 surrounding and adjacent to Whitcomb Court and who do not fit within a narrowly defined group of people. The critical issue is whether the “privatized” streets and sidewalks are public and as such are a “traditional public forum,” or whether they are “private” and, thereby, a “nonpublic forum.” If they are “traditional public forum,” then the barment-trespass procedure must satisfy the strict scrutiny requirement that the procedure be narrowly tailored to serve a compelling state interest. See Daniel v. City of Tampa, 38 F.3d 546 (11th Cir.1994).
A. “PUBLIC FORUM”
The constitutionality of government regulation of First Amendment rights is analyzed under a public fora analysis. See Warren v. Fairfax County, 196 F.3d 186, 190 (4th Cir.1999).
The public forum analysis was created to recognize that the government must be able to limit the use of its property to the intended purpose for which the property was created and to limit access to those rightfully conducting business there. Toward that end, the Court has identified at least three types of fora for First Amendment purposes, each subject to a different regime of constitutional scrutiny: the traditional public forum, the designated public forum, and the nonpublic forum. The Court distinguishes between these fora based upon the physical characteristics of the property, including its location, the objective use and purposes of the property and government intent and policy with respect to the property, which may be evidenced by its historic and traditional treatment.
Id. at 190-91 (internal citations omitted). Public streets and sidewalks are repeatedly referred to as the archetype of a traditional public forum because they “are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property.” United *57 States v. Grace, 461 U.S. 171, 179, 103 S.Ct. 1702, 1708, 75 L.Ed.2d 736 (1983).
Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.
Hague v. Committee for Industrial Organization, 307 U.S. 496, 515-16, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939).
“Ownership [of streets and sidewalks] does not always mean absolute dominion.” Marsh v. Alabama, 326 U.S. 501, 506, 66 S.Ct. 276, 278, 90 L.Ed. 265 (1946) (holding that privately owned streets and sidewalks in a company owned town which are built and operated primarily to benefit the public are traditional public forums that are protected by First Amendment constitutional guarantees). In Grace, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736, the United States Supreme Court addressed the ability of the government to redefine certain public sidewalks in front of the United States Supreme Court Building as a non-public forum. There was no separation, fence or any other indication to persons entering the sidewalks that served as the perimeter of the Court grounds that they entered a non-public forum. “The sidewalks comprising the outer boundaries of the Court grounds are indistinguishable from any other sidewalks in Washington D.C., and ... [there is] no reason why they should be treated any differently.” Id. at 179, 103 S.Ct. at 1702. The Court held that:
“Congress[, no more than a suburban township,] may not by its own ipse dixit destroy the ‘public forum’ status of streets *58 and parks which have historically been public forums.... ” The inclusion of the public sidewalks within the scope of § 13k’s prohibition, however, results in the destruction of public forum status that is at least presumptively impermissible. Traditional public forum property occupies a special position in terms of First Amendment protection and will not lose its historically recognized character for the reason that it abuts government property that has been dedicated to a use other than as a forum for public expression. Nor may the government transform the character of the property by the expedient of including it within the statutory definition of what might be considered a non-public forum parcel of property.
Id. at 180, 103 S.Ct. at 1702 (quoting U.S. Postal Service v. Greenburgh Civic Assn’s, 453 U.S. 114, 133, 101 S.Ct. 2676, 2687, 69 L.Ed.2d 517 (1981)) (quotation altered to reflect original wording).
As in Grace, the streets surrounding Whitcomb Court deeded to RRHA were not separated in any manner from the other streets and sidewalks in the area. The sole indication to the public that they have entered a “private” street are “red and white signs ... approximately 18 inches to almost 24 inches by about 12 inches ... spaced about every hundred feet on each block” and on each building indicating that “these streets are privatized and all the property is privatized,, no trespass.” There is no indication to the public until after they enter onto the “privatized” streets that the streets are any different from the rest of the streets in the city and are now private property. Some of the “privatized” streets are “private” for only a couple of blocks and are public on both ends of the “privatized” blocks. Thus, although the street signs declare the streets “private” and for the exclusive use of residents and those persons there on legitimate business, the streets and sidewalks continue to serve the same functions and are equally accessible to the public as before the City of Richmond passed the ordinance “privatizing” the streets.
*59 Once a person has entered a “privatized” street he or she is subject to the barment-trespass procedure. A trespasser who receives a warning is informed that he or she is “not to trespass upon RRHA property” or “Whitcomb Court.” However, the warning does not inform the person that the streets and sidewalks surrounding the complex are a part of RRHA property.
Because the streets appear no different from other streets in Richmond and serve the same function they did prior to “privatization,” “we can discern no reason why they should be treated any differently” from any other street or sidewalk. Grace, 461 U.S. at 179, 103 S.Ct. at 1708. The City of Richmond is not permitted to transform the public streets and sidewalks in Whitcomb Court into private, non-public property simply by passing an ordinance declaring them closed, conveying them to another governmental entity, the RRHA, and placing signs along the streets. See Marsh, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265; Grace, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736. Thus, the streets and sidewalks surrounding Whitcomb Court did not lose their public forum status when the City of Richmond deeded them to the RRHA and put some signs on the street indicating they were now private property. Hence, the barment-trespass procedure must satisfy the rigors of strict scrutiny to pass constitutional muster.
The Commonwealth argues that our prior decisions in Collins v. Commonwealth, 30 Va.App. 443, 517 S.E.2d 277 (1999), and Holland v. Commonwealth, 28 Va.App. 67, 502 S.E.2d 145 (1998), allow housing authorities to restrict access to their property and designate police officers to serve barment notices and arrest persons trespassing on housing authority property. We have previously approved a process by which police officers may be designated as agents of a housing authority to serve barment notices on persons trespassing on housing authority property, see Collins, 30 Va.App. at 449, 517 S.E.2d at 280; Holland, 28 Va.App. at 70-76, 502 S.E.2d at 146-49. However, what distinguishes this case from those is that Hicks was found guilty of trespass for having gone upon Bethel Street and the adjacent sidewalk, whereas in both *60 Holland and Collins, the defendants were on the non-public grounds and in the buildings of the housing authority.
The Commonwealth also contends that we should follow the Eleventh Circuit’s decision in Daniel, 38 F.3d 546. The Daniel court authorized a housing authority to enforce a no trespassing policy identical to the one at issue in the instant case. However, unlike the instant case, in Daniel, “the City-owned streets and sidewalks surrounding and intersecting with the Housing Authority property [were] open to the public” and Daniel had “unlimited access to the City-owned streets and sidewalks adjacent to the housing complex.” Id. at 548 n. 3 & 550; see also Walker v. Georgetown Hous. Auth., 424 Mass. 671, 677 N.E.2d 1125, 1128 (1997) (calling into question the reasoning of the Daniel court and the applicability of the ruling to streets and sidewalks that were kept “open to the public”). Thus, in Daniel, the no trespassing policy was limited to the non-public forum consisting of the housing authority’s buildings and grounds and did not include the adjacent streets and sidewalks as the RRHA policy does in the instant case. Bethel Street is a public street that was built and maintained with public funds to provide access by the public to that part of Richmond. As with all public streets and thoroughfares, historically and traditionally public streets have served as a locale for the free exchange and dissemination of ideas and have served as an area where citizens can freely and lawfully congregate or move about and exchange discourse.
The fact that legal title to the streets is transferred from a municipal government to a government agency which owns and operates a public housing development does not change the public nature and character of the streets and sidewalks which provide access to the public to this part of the City. See Marsh, 326 U.S. 501, 66 S.Ct. 276, 90 L.E,d. 265. The City cannot transform the public streets surrounding Whitcomb Court into non-public streets by declaring them closed by ordinance and conveying them to another governmental entity when they continue to serve the same public purpose as before.
*61 B. “STRICT SCRUTINY”
Therefore, the City of Richmond’s and RRHA’s attempt to control access to and movement upon the streets and sidewalks of the city is “subject to strict scrutiny; [it] must be narrowly tailored to serve [the] compelling state interest” of providing safe housing to the development’s residents. Daniel, 38 F.3d at 549. The stated goal of the RRHA barmenttrespass procedure is to ensure a safe environment free from criminal activity for the residents of Whitcomb Court. We agree that the City of Richmond has a compelling interest in protecting its citizens and preventing criminal activity. However, it may not, in its endeavor to control crime, pass and enforce a regulation so broad in scope that it unduly restricts or criminalizes innocent constitutionally protected behavior.
The barment-trespass procedure used in this case inhibits a person’s constitutionally protected “ ‘right to remove from one place to another according to inclination’ ” and the person’s right to “remain in a public place of his choice.” Chicago v. Morales, 527 U.S. 41, 53, 54, 119 S.Ct. 1849, 1857, 144 L.Ed.2d 67 (1999) (quoting Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128, 129, 45 L.Ed. 186 (1900)). In Morales, the United States Supreme Court held that a city ordinance designed to reduce crime by criminalizing “loitering” violates the Constitution. The Court stated that “it is apparent that an individual’s decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is ‘a part of our heritage’ or the right to move ‘to whatsoever place one’s own inclination may direct’ ” and the ordinance “broadly covers a significant amount” of activity that is constitutionally protected. Id. at 53-54, 119 S.Ct. at 1849 (internal citations ommitted). The City of Richmond and RRHA barment-trespass procedure also prevents a person from standing upon the streets surrounding Whitcomb Court without a “legitimate reason.” Thus, it implicates the same concerns addressed in Morales.
The barment-trespass procedure is not limited so as to encompass only those persons whose conduct the City and *62 RRHA were seeking to curtail. The procedure is so broad that citizens who merely drive or walk upon one of the “privatized” streets fall within the defined group of people not authorized by the barment procedure to be upon the streets and sidewalks and, thus, may be deemed guilty of criminal conduct. A citizen need not commit a crime, intend to commit a crime or infringe upon the privacy of the residents of Whitcomb Court to be in violation of the barment-trespass statute and ordinance. The Commonwealth presented no evidence that appellant did anything other than exercise his constitutionally protected right to . walk upon the streets and sidewalks of the City of Richmond. Perhaps, had Bethel Street been gated, barricaded, or physically restricted to traffic where the public was not free to travel, as with gated communities, the street could be considered non-public and not a “traditional public forum.” But the City can no more “close” the streets in Whitcomb Court and leave them open to the public, thereby purporting to make them a “non-public forum,” than it could declare “closed” all streets in Richmond’s troubled neighborhoods and residential areas, thereby denying access to all citizens except the residents and their invitees and others specifically approved. Neighborhood streets, such as those in Whitcomb Court, are public streets, paid for and maintained with public funds, for the use and benefit of the public.
While a public entity can restrict the use of public property or buildings to those who are using the property for its intended “non-public” purpose, such as an office building, it cannot restrict public property that is considered a “traditional public forum,” such as a street or sidewalk, that is being used in a lawful way and for a lawful purpose that is constitutionally protected. See United States v. Kokinda, 497 U.S. 720, 727, 110 S.Ct. 3115, 3120, 111 L.Ed.2d 571 (1990) (holding that sidewalk in front of a post office “constructed solely to provide for the passage of individuals engaged in postal business” is a non-public forum). Here, in effect, the City and RRHA, by converting the streets and sidewalks to private property, attempted to confer upon RRHA the same rights as a private *63 property owner who may restrict everyone from coming upon the private property owner’s property except the owner’s tenants and the tenants’ invitees, regardless of whether the invitees had done anything unlawful. However, the United States Supreme Court has held that even a private entity which owns the entire town cannot close the streets to deny the public their constitutional rights. See Marsh, 326 U.S. at 506, 66 S.Ct. at 276. Therefore, the barment-trespass procedure at issue here is not narrowly tailored to encompass only those activities the RRHA sought to exclude from their property.
III. CONCLUSION
Thus, we hold that Richmond’s barment-trespass procedure, when strictly scrutinized, is not narrowly tailored to serve the government’s compelling interest, the standard that must be met when the government attempts to regulate activity in a “traditional public forum.”[4] The RRHA’s privatization effort unconstitutionally infringes upon a citizen’s First and Fourteenth Amendment rights to lawfully be present in a public place. Accordingly, we hold that city ordinance No. 91-181-197 as enforced through the barment-trespass procedure is unconstitutional and-we reverse and dismiss appellant’s conviction.[5]

Reversed and dismissed in part, reversed and remanded in part.

. RRHA issued a brochure to the residents explaining the goals of street privatization:
To make communities safer by removing persons who commit unlawful acts which destroy the peaceful enjoyment of other residents To ensure that children have places to play free of drug paraphernalia and the danger of gunshots and other criminal activity.
To provide an opportunity for residents to develop safety initiatives in their community, such as resident patrols, social security number property identification, neighborhood watch, etc.
To hold households who knowingly harbor persons who engage in criminal activity accountable.

. Appellant's barment from Whitcomb Court is not related to his damaging property at Whitcomb Court.

. The Commonwealth argues that appellant is barred from contesting the validity of the barment-trespass procedure because he did not present a defense to his presence on RRHA property or challenge his original barment notice or the barment-trespass procedure itself prior to being charged with trespass on January 20, 1999. Therefore the Commonwealth argues that he is improperly collaterally attacking his conviction. We disagree. Prior to his trial for this trespass charge, appellant challenged the barment-trespass procedure as unconstitutional. At trial, appellant’s defense to the trespass charge was that the barment-trespass procedure violated his constitutional rights and, thus, he could not be guilty of trespass because he had a constitutional right to be walking on Bethel Street. Thus, we End that appellant timely raised the issue of the validity of the barment-trespass procedure.

. In his petition for appeal, appellant also requested this Court to set aside the order revoking his suspended sentences on his two prior convictions for trespassing at Whitcomb Court and his prior conviction for damaging property at Whitcomb Court. However, appellant did not pursue this on brief or in oral argument. Therefore, we remand this case to the circuit court to reconsider the revocation of his suspended sentences in light of our holding in this opinion.

. Because we reverse on the failure of the City of Richmond to establish the constitutionality of the barment-trespass procedure, we do not address appellant’s arguments regarding errors in the general district court proceedings or whether the barment-trespass procedure violated the procedural due process requirements of the Fourteenth Amendment.