## Richmond

EDWARD DEVINE JOHNSON, JR. v. COMMONWEALTH OF VIRGINIA.
ROBERT FRANK EVANS v. COMMONWEALTH OF VIRGINIA.
WILLIAM MASSIE v. COMMONWEALTH OF VIRGINIA.
JAMES W. McCLUNG v. COMMONWEALTH OF VIRGINIA.
JAY GARLAND RAINEY v. COMMONWEALTH OF VIRGINIA.
STEPHEN B. ROCHELLE v. COMMONWEALTH OF VIRGINIA.
LEWIS HAZEN SWORD v. COMMONWEALTH OF VIRGINIA.

January 17, 1972.

Record Nos. 7749, 7750, 7751, 7752, 7753, 7754, 7755.

Present, All the Justices.

*John C. Lowe; F. Guthrie Gordon, III (Lowe & Gordon,* on brief), for plaintiff in error in Record Nos. 7749, 7750, 7751, 7752, 7753, 7754 and 7755.

*William G. Broaddus, Assistant Attorney General (Andrew P. Miller, Attorney General; D. Patrick Lacy, Jr., Assistant Attorney General,* on brief), for defendant in error in Record Nos. 7749, 7750, 7751, 7752, 7753, 7754 and 7755.

GORDON, J., delivered the opinion of the court.

On April 24, 1970, a group of students of Madison College, a State institution, applied for permission to hold a "vigil" or protest gathering in Wilson Hall, the administration building of the College. The Dean of Student Services denied the application because the "vigil" qualified as a demonstration under College regulations and the regulations forbade a demonstration in a College building. Nevertheless, students and at least one member of the faculty, including all the defendants in this case, gathered in Wilson Hall on the night of April 26 to hold a "vigil".

College officials requested those in the building, including the defendants, to leave and warned them of the consequences if they did not leave. The defendants and others who did not leave the building were arrested and charged with trespass.[1]

The defendants were tried in the County Court of Rockingham County (a court not of record), convicted and fined $100 each.[2] Upon appeal to the Circuit Court of Rockingham County (a court

---

[1] Defendants Edward D. Johnson, Robert Evans, William Massie, Jay Garland Rainey, Stephen B. Rochelle and Lewis H. Sword were students, and defendant James McClung was a member of the faculty. Defense counsel contend the evidence does not show that defendant Evans was present when the group was requested to leave the building. We find, however, that the evidence supports the jury's finding that he was present.

The evidence leading to, and the incidents of, the "vigil" on the night of April 26, 1970 are more fully described in the opinion of the Fourth Circuit in *Sword* v. *Fox, infra* n. 2.

[2] Before the defendants were sentenced in the county court, Lewis H. Sword, Stephen B. Rochelle, Jay G. Rainey and certain others filed a complaint in the United States District Court for the Western District of Virginia. They sought a declaratory judgment that the College regulations, under which the application for the "vigil" was denied, were constitutionally invalid as overbroad and vague and as impermissible restraints on freedom of speech and assembly. The District Court granted the relief sought, *Sword* v. *Fox,* 317 F. Supp. 1055 (W.D. Va. 1970); but on appeal the Fourth Circuit reversed, *Sword* v. *Fox,* 446 F.2d 1091 (4th Cir. 1971), *cert. denied,* 404 U.S. 994, 30 L.ed.2d 547 (1971).

of record), they were tried by a jury, which found them guilty and fixed sentences as follows:

McClung—9 months in jail and $1,000 fine
Rainey and Rochelle—6 months in jail and $500 fine, each
Johnson, Evans, Massie and Sword—$500 fine, each.

The defendants are now before us on appeal from the orders of the Circuit Court sentencing them in accordance with the jury verdict. Four of the points raised by defense counsel merit discussion.

I

Whether the Trespass Statute
Applies to Public Property

Defense counsel contend that Code § 18.1-173, the trespass statute under which the defendants were charged, does not apply to Wilson Hall because it is owned by the Commonwealth.[3]

In *Miller v. Harless*, 153 Va. 228, 149 S.E. 619 (1929), however, we held that a similar trespass statute, Va. Code Ann. § 3338 (1928), applied to property of a State institution, Virginia Polytechnic Institute. Although the language of Code § 3338 differed from the language of present Code § 18.1-173, we find nothing in the language of the two sections to indicate any distinction respecting their applicability to public as well as private property.[4]

It is true, as pointed out by the Court in the *Miller* case and by defense counsel in this case, that the Board of Visitors of VPI had been granted (among other powers) the power "to prohibit entrance to said property [property of VPI] of undesirable and disorderly persons, or to eject said persons from said property, and to prose-

---

[3] "§ 18.1-173. *Trespass after having been forbidden to do so.*—If any person shall without authority of law go upon or remain upon the lands, buildings or premises of another, . . . after having been forbidden to do so . . . by the owner, lessee, custodian or other person lawfully in charge thereof, . . . he shall be deemed guilty of a misdemeanor. . .".
"* * *"
Va. Code Ann. § 18.1-173 (1960).

[4] Code § 3338, which was applicable in *Miller v. Harless, supra*, proscribed first the unauthorized hunting on property "of another". The section then provided that "if any person after being warned not to do so by the owner, or his agent, shall go upon the property of the said owner, he shall . . . be deemed guilty of a misdemeanor. . .". Va. Code Ann. § 3338 (1928).

cute under the laws of the State trespassers and persons committing offenses on said property." Va. Code Ann. § 864 (1924). But in holding Code § 3338 applicable to a trespass upon VPI property, the Court necessarily held that section applicable to publicly owned property. Otherwise, a trespasser upon VPI property could not have been prosecuted under § 3338, whether at the instance of the Board of Visitors or anyone else. So we agree with the Attorney General that the *Miller* case is direct and controlling authority against defense counsel's position in this case.

Defense counsel rely principally upon the following statement in *Hall* v. *Commonwealth*, 188 Va. 72, 77, 49 S.E.2d 369, 371 (1948), involving a prosecution of Jehovah's Witnesses for trespass while engaged in distributing religious tracts:

> "The only purpose of this law [the trespass law now codified as § 18.1-173] is to protect the rights of the owners or those in lawful control of private property".

But that statement was made in the context of a controversy whether the trespass statute could be applied, consistently with First and Fourteenth Amendment guarantees, to the use of passageways in a privately-owned apartment building. The *Hall* case did not involve the applicability of the trespass statute to property owned by the Commonwealth.

The statement in *Hall* v. *Commonwealth, supra,* was repeated in *Price* v. *Commonwealth*, 209 Va. 383, 387, 164 S.E.2d 676, 679 (1968). Nevertheless, the Court in *Price* decided merely that a trespass statute (Code § 18.1-365, the language of which is similar to Code § 18.1-173) did not apply to a public street. The holding in *Price* is consistent with *Miller* v. *Harless, supra,* which expressly recognized that the trespass statute there involved did not apply to walkways and driveways on the VPI campus.

Despite the dictum in *Hall* v. *Commonwealth, supra,* and its repetition in *Price* v. *Commonwealth, supra,* our decisions in those cases are not inconsistent with our decision in *Miller* v. *Harless, supra.* Before our decision today, *Miller* stood for the proposition that a trespass statute like Code § 18.1-173 applies to publicly owned property other than thoroughfares. We now reaffirm that proposition.

## II

### Whether the Defendants Had a Constitutional Right to Be and Remain in Wilson Hall on the Night of April 26, 1970

■ Defense counsel contend that since the First Amendment guarantees the defendants the right of protest they were exercising in Wilson Hall on the night of April 26, 1970, they cannot be convicted of trespass for being and remaining there that night.

The record before us supports the finding made by the Fourth Circuit in *Sword* v. *Fox, supra,* n. 2: "What was denied these students—and all that was denied them—was the right to demonstrate by a 'sit-in' *specifically in Wilson Hall.* It is thus not the *right* to protest but the *place* of protest that was regulated and is involved in this appeal." 446 F.2d at 1095.

For the reasons set forth in the opinion of the Fourth Circuit in *Sword* v. *Fox, supra,* we hold that the defendants had no constitutional right to be and remain in Wilson Hall on the night of April 26, 1970.

### III

#### Whether the Trial Judge Improperly Commented on the Defendants' Failure to Testify

■ In his closing argument, defense counsel remarked "that these students were there [in Wilson Hall] in good faith, they were there sincerely and conscientiously". The Commonwealth's Attorney objected on the ground that the evidence did not support the remark.

When defense counsel expressed "shock" at the objection of the Commonwealth's Attorney, the court stated: "What I think Mr. DePoy [the Commonwealth's Attorney] meant was that there has been no explanation by any of the defendants as to what really transpired or why they did this or anything else." Defense counsel immediately moved for a mistrial on the ground that the court had commented on the failure of the defendants to take the stand.

The court denied the motion for a mistrial, after advising the jury:

"The court charges the jury and tells the jury that an accused person does not have to take the stand, that he is at liberty to remain off the witness stand if he wishes. He does not have to testify and his failure to testify cannot be considered by the jury in any way as prejudicial to him or creating any inference of his guilt or his involvement. It is a privilege that any accused person has and I think the dialogue between the objecting prosecutor and the defense counsel gave rise to the court's utterance, and was justified."

Defense counsel assigns error to the court's failure to grant a mistrial.

We find no error. Defense counsel's remarks gave reason for the court's remark. And the court correctly and fully advised the jury respecting the defendants' right to remain silent.

## IV

### Whether the Increased Sentence Imposed in the Court of Record Violated Due Process

■ Defense counsel contend that the Circuit Court of Rockingham County unconstitutionally sanctioned a more severe sentence than that imposed by the County Court. Despite our holding in *Evans v. Richmond*, 210 Va. 403, 171 S.E.2d 247 (1969), that a more severe sentence is not constitutionally impermissible under these circumstances, counsel attack the increased sentence because of its "chilling" effect on the defendants' right of appeal to the circuit court.

In *Wood v. Ross*, 434 F.2d 297 (4th Cir. 1970), the court reached the opposite conclusion from *Evans*.[5] The Fourth Circuit in that case expressed its disagreement not only with *Evans* but also with the First Circuit's decision in *Lemieux v. Robbins*, 414 F.2d 353 (1st Cir. 1969), which reached the same conclusion as *Evans*. We will now reexamine *Evans*.[6]

We are of course bound by *North Carolina v. Pearce*, 395 U.S. 711 (1969), to the extent that it is applicable here. *Pearce* tells us that:

"vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may

---

[5] The Supreme Court granted certiorari to review the judgment in *North Carolina v. Rice*, 434 F.2d 297 (4th Cir. 1970), a companion case in which the Fourth Circuit reached the same conclusion as in *Wood v. Ross, supra*. 401 U.S. 1008. On December 14, 1971, the Supreme Court vacated the judgment of the Fourth Circuit in *Rice* and remanded the case for reconsideration of the question of mootness, without reaching the question we are now considering. *North Carolina v. Rice*, 404 U.S. 244, 30 L.ed.2d 413 (1971).

[6] We cannot ignore a practical consideration, the power of federal courts to grant habeas corpus if they disagree with our interpretation of the Constitution of the United States. At the same time, we cannot abdicate for reasons of expediency our function of deciding questions properly before us involving the Constitution of the United States, in the light of decisions of the Supreme Court and subject to correction by that Court.

unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."

*Id.* at 725.

Pearce was convicted of a felony and sentenced by a trial judge to imprisonment for twelve to fifteen years. In a post conviction proceeding, he secured a reversal of his conviction on the ground that an involuntary confession had been admitted in evidence against him. Pearce was retried, convicted and sentenced by the trial judge to a longer prison term than originally imposed.[7] The Supreme Court held that the increased punishment violated due process.

Vindictiveness in the imposition of sentence, against which *Pearce* levels its main thrust, is lacking in the cases now before us. The jury, which fixed the defendants' sentences in the circuit court, cannot be deemed to have increased the sentences imposed in the county court to punish the defendants for exercising their right to appeal. To assume that the jurors even knew of the sentences imposed by the county court would assume they had information not rightfully theirs.

There are yet other differences between Pearce's case and these cases.

In Pearce's case, the right to a new trial was predicated and dependent on error in the first trial. And, in the words of the First Circuit, the "very proof of error [gave] the state the opportunity to increase the punishment." *Lemieux* v. *Robbins, supra* at 355.

In these cases, the defendants' appeal to the circuit court was not predicated or dependent on error in the trial in the county court. In fact, their appeal to the circuit court was not an appeal in the usual sense of the word. Rather, the defendants' "appeal" was an exercise of the unqualified right to a trial de novo, which gave them a second full opportunity for acquittal.

To view the Virginia procedure as forcing an accused to lose the "benefit" of the county court sentence and as "chilling" his right to appeal begs the point. The State could constitutionally afford an

---

[7] At the second trial, Pearce was "sentenced by the trial judge to an eight-year prison term, which, when added to the time Pearce had already spent in prison, the parties agree amounted to a longer total sentence than that originally imposed". *North Carolina* v. *Pearce, supra* at 713.

accused the right to only one original trial. One trial in the circuit court would satisfy all constitutional guarantees.

Instead, the State gives an accused the benefit of two full opportunities for acquittal in the long run interest of speedy trial in the county court and reducing the load of the circuit court. If an accused elects to take advantage of a second and fresh opportunity, it appears entirely fair that the accused and the State should start again at parity, as contemplated under the Virginia procedure.

*Pearce*, even if it should be applied full force to an "appeal" to a circuit court, does not mean that no "chilling effect" can ever be attached to an appeal. Instead, *Pearce* lays down a rule of reasonableness. *See Lemieux* v. *Robbins, supra* at 355. And the Virginia procedure, as applied to the defendants in this case, supports a legitimate state interest and is fair and reasonable.

In short, we agree with what the First Circuit said in *Lemieux* v. *Robbins, supra,* much of which we have repeated. *See* also *State* v. *Spencer,* 276 N.C. 535, 173 S.E.2d 765 (1970); *State* v. *Sparrow,* 276 N.C. 499, 173 S.E.2d 897 (1970). Accordingly, we adhere to *Evans* v. *Richmond, supra.*

*Affirmed.*