535 S.E.2d 678

Kevin Lamont HICKS

v.

COMMONWEALTH of Virginia.

Record No. 1895–99–2.

Court of Appeals of Virginia,
Chesapeake.

Oct. 17, 2000.

562

Steven D. Benjamin, (Betty Layne DesPortes; Benjamin & DesPortes, P.C., on briefs), Richmond, for appellant.

Virginia B. Theisen, Assistant Attorney General, (Mark L. Earley, Attorney General, on brief), for appellee.

Present: COLEMAN and HUMPHREYS, JJ., and OVERTON, Senior Judge.

HUMPHREYS, Judge.

Kevin Lamont Hicks appeals his conviction in a trial *de novo* appeal to the circuit court (trial court) for trespass. Hicks complains that 1) the trial court erred in denying his motion to remand the case to the general district court with instructions for the matter to be tried before a different judge of that court and for the Commonwealth's Attorney to prosecute the case in that forum; 2) the trial court erred in denying his motion to dismiss the prosecution on the grounds that his due process and First Amendment rights were violated; and 3) the trespassing statute is unconstitutionally vague and overbroad. We disagree and for the reasons that follow, affirm his conviction.

## I. Background

Previous to January 20, 1999, Hicks had been convicted of trespassing on the property of Whitcomb Court on February 10, 1998, and June 26, 1998, respectively, and of damaging property there on April 27, 1998.

Whitcomb Court is a housing project owned by the Richmond Redevelopment and Housing Authority ("Authority"). The City of Richmond, by ordinance, deeded certain city streets including the 2300 block of Bethel Street, to the Authority for the express purpose of privatizing and closing them to traffic by non-residents. "No Trespassing" signs were placed at intervals on the privatized streets. The Authority authorized the Richmond Police Department to enforce the trespass statute on its property, including Whitcomb Court. On April 14, 1998, Mrs. Gloria Rogers, housing manager at Whitcomb Court, personally served a written notice on Hicks advising him that he was banned from the Whitcomb Court property. This notice specifically advised Hicks that if he were "seen or caught on the premises, [he would] be subject to arrest by police." Hicks acknowledged receipt by signing a copy of the notice. On two occasions after receiving

the notice, Hicks went to Mrs. Rogers and sought permission to come back on the property. He told Mrs. Rogers that his mother lived there. His barment from the property was not lifted.

On January 20, 1999, Officer James Laino observed Hicks walking in the 2300 block of Bethel Street. Officer Laino had personal knowledge that Hicks was barred from the property and had arrested him previously for trespassing. Hicks told Laino that he was there "to bring pampers for his baby." Laino issued Hicks a summons for trespassing.

Hicks was tried in general district court on the trespassing summons on April 21, 1999. Hicks was represented by counsel. No prosecutor was present on behalf of the Commonwealth.

Officer Laino testified and responded to questions by the court and was cross-examined by counsel for Hicks.[1] Hicks then testified on his own behalf. Following direct examination, the court propounded several questions to which counsel for Hicks objected. Counsel for Hicks moved to strike Hicks' "testimony in totality." The court granted this motion. The defendant was convicted in general district court and noted his appeal to the circuit court.

Prior to trial in the circuit court, Hicks filed a motion asking the circuit court to remand the case for a new trial in the general district court before a different judge and with direction to the Commonwealth's Attorney that his office represent the Commonwealth in the new trial. At the hearing on his motion, Hicks asked that, in the alternative to granting his motion to remand, the case be dismissed. The circuit court denied the motion on the grounds that it lacked any authority to grant it.

---

1. The transcript of the trial in the general district court identifies the witness as "Officer James Hannah." Although the discrepancy is not fully explained in the record, it appears that this witness was actually the same Officer James Laino who issued the summons and testified in the circuit court.

Also prior to trial, Hicks moved to dismiss the charge on the ground that the Authority's trespass policy violates the federal and state constitutions. At a hearing on this motion, Mrs. Rogers testified as to the trespass policy at Whitcomb Court. Through Rogers, a flyer was introduced into evidence which the Authority gave to residents and which described the privatization of the streets in the housing complex. This flyer stated and Rogers confirmed in her testimony that non-residents who have not been barred from the property and who can demonstrate that they have been invited by a resident are not affected by the trespassing policy. Rogers also testified that the open-air drug market in the area was the reason for much of the policy toward trespassers and that it is usually a member of the police department who gives the notice and warning. Mrs. Rogers testified that criminal acts on the premises, including those involving drugs or domestic violence, were grounds for barment. She further testified that the police were authorized to warn non-residents to leave the property if they could not demonstrate that they were invited by a resident and to bar them from returning. Additionally, Mrs. Rogers indicated there was a process for having a barment lifted by submitting a written request through the Authority's director of housing operations. She also testified that any organization that seeks to use a privatized street must get permission first and requests to hold functions or pass out materials on the privatized streets are referred to a "community council." She testified that she had not denied permission to anyone who had sought to pass out flyers on the complex property.

The motion to dismiss on constitutional grounds was denied, and Hicks was subsequently tried *de novo* in a bench trial and convicted of trespassing.

## II. Motion for Remand

Hicks first argues that he was entitled to have his case remanded to the general district court for a new trial before another judge because the judge of that court who presided

over the initial trial improperly assumed the role of a prosecutor by "cross-examining" him.

■■ The Supreme Court of Virginia has long held that there is no inherent damage to a fair trial when a judge asks questions of a witness.

> [A] trial judge [may] ask questions of a witness either on his examination in chief or on cross-examination. The practice is common and perfectly permissible. Indeed, there are times when it is his duty to do so. He is not to sit there and see a failure of justice on account of omissions to prove facts plainly within the knowledge of a witness, but the character of his questions should not be such as to disclose bias on his part, or to discredit the truthfulness of the witness. "For the purpose of eliciting evidence which has not otherwise been brought out, it is proper for the judge to put the questions to a witness either on his examination in chief or on his cross-examination, and where anything material has been omitted, it is sometimes his duty to examine a witness."

*Mazer v. Commonwealth,* 142 Va. 649, 655, 128 S.E. 514, 516 (1925) (citations omitted).

In addition, we have held that "the trial court, in the exercise of its sound discretion, may permit jurors to submit written questions to be asked of a witness." *Williams v. Commonwealth,* 24 Va.App. 577, 582, 484 S.E.2d 153, 155 (1997). We also noted in *Williams* that "[t]he function of a jury is to assure a fair and equitable resolution of all factual issues. The jury serves as the final arbiter of the facts, 'charged with weighing the evidence, judging the credibility of the witnesses, and reaching a verdict' in the case." *Id.* at 582, 484 S.E.2d at 155. This function belongs no less to the court when serving as the fact finder. We need not determine here whether the general district court judge's questions demonstrated an inappropriate bias or prejudice because the court granted Hicks' motion to strike the questions as well as his answers.

In addition, the remedy provided to any defendant in a criminal case who perceives error on the part of a trial court is to exercise the right to appeal the matter to a higher tribunal. In the context of misdemeanors tried in the district courts, the General Assembly has established a right to a trial *de novo* in the circuit court.[2] A *de novo* hearing means a trial anew. On appeal, a conviction in the district court is annulled, and a new trial is held in the circuit court. *See Ledbetter v. Commonwealth*, 18 Va.App. 805, 447 S.E.2d 250 (1994).

While it would clearly be preferable for the Commonwealth to be represented by counsel in every case in which it is a party, the General Assembly has declined to mandate such representation. Code § 15.2–1627(B) recites the duties of Commonwealth's Attorneys and their assistants.[3] This statute only requires Commonwealth's Attorneys to prosecute felonies and provides that a prosecutor "may in his discretion, prosecute Class 1, 2 and 3 misdemeanors." Clearly, the General Assembly decided as a matter of policy to place the discretion for the representation of the Commonwealth in misdemeanor cases in the hands of the executive branch rather than the judicial branch of government.

Hicks relies on the decision of the Supreme Court of the United States in *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), as authority for his argument that a trial *de novo* does not cure errors committed in a lower court. We find his reliance on *Ward* is misplaced. In *Ward*, the Supreme Court addressed a systemic problem of

---

**2.** Code § 16.1–136 provides in pertinent part: "Any appeal taken under the provisions of this chapter shall be heard de novo in the appellate court and shall be tried without formal pleadings in writing; and, ... the accused shall be entitled to trial by a jury in the same manner as if he had been indicted for the offense in the circuit court."

**3.** Code § 15.2–1627(B) provides in pertinent part: "The attorney for the Commonwealth ... shall have the duties and powers imposed upon him by general law, including the duty of prosecuting all warrants, indictments or informations charging a felony, and he may in his discretion, prosecute Class 1, 2 and 3 misdemeanors, or any other violation, the conviction of which carries a penalty of confinement in jail, or a fine of $500 or more, or both...."

bias inherent in the infrastructure of local mayors' courts. There, mayors of villages sat as judges in the courts, and a major portion of village income was derived from the collection of these fines. In finding that such a scheme violates the due process rights of criminal defendants in the mayors' courts, Justice Brennan noted that the constitutional infirmity was grounded in the separation of powers doctrine.

> Although "the mere union of the executive power and the judicial power in him cannot be said to violate due process of law," the test is whether the mayor's situation is one "which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused." Plainly that "possible temptation" may also exist when the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court.

*Id.* at 60, 93 S.Ct. at 83 (citations omitted).

Hicks does not allege, nor do we find, such systemic bias in the procedural structure of the district courts in the Commonwealth. Thus, assuming without deciding that the questions propounded by the general district court judge constituted error, we find that the trial *de novo* in the circuit court provided an adequate remedy.

### III. First Amendment

Hicks asserts that the Authority's trespass policies violate his First Amendment right to freedom of association under the constitutions of the United States and the Commonwealth of Virginia.

Hicks was charged with violating Code § 18.2–119, which provides in pertinent part that "[i]f any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so ... [or] after having been

forbidden to do so by a sign or signs posted . . . shall be guilty of a Class 1 misdemeanor."

 Hicks concedes that he had been forbidden to come onto the Whitcomb Court property and admits he did so notwithstanding his barment. Furthermore, he apparently took no steps to appeal his barment through official channels of the Authority or the courts. Instead, Hicks argues that, notwithstanding the privatization of the street where he was cited, it was public property constituting a "public forum" under the holding of *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). We disagree. First, the Supreme Court of Virginia has specifically held that the trespass statute applies to publicly owned property. *See, e.g., Johnson v. Commonwealth*, 212 Va. 579, 186 S.E.2d 53 (1972); *Jordan v. Commonwealth*, 207 Va. 591, 151 S.E.2d 390 (1966); *Miller v. Harless*, 153 Va. 228, 149 S.E. 619 (1929). In addition, we have held that an alleyway, which has been vacated by municipal ordinance and marked with "No Trespassing" signs, is not "intended for public use." *Miller v. Commonwealth*, 10 Va. App. 472, 475, 393 S.E.2d 431, 433 (1990).

 "[T]he extent to which the Government can control access depends on the nature of the relevant forum." *United States v. Kokinda*, 497 U.S. 720, 726, 110 S.Ct. 3115, 3119, 111 L.Ed.2d 571 (1990). Regulation of a non-public forum requires only reasonableness and "not an effort to suppress expression merely because public officials oppose the speaker's view. Indeed, control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Id.* at 730, 110 S.Ct. at 3121–22 (citations omitted).

The Attorney General cites *Daniel v. City of Tampa*, 38 F.3d 546 (11th Cir.1994), *cert. denied*, 515 U.S. 1132, 115 S.Ct. 2557, 132 L.Ed.2d 811 (1995). The *Daniel* court considered the constitutionality of a Florida trespass-after-warning statute in the context of the property of the Tampa Housing Authority. There, as here, the stated rationale for the tres-

passing enforcement effort was to "provide a safe environment for citizens" in a place often used to sell drugs. *Id.* at 548.

In concluding that the Tampa Housing Authority property was a non-public forum, the *Daniel* court found that the restriction on access was content neutral and reasonable and that Florida's trespass statute was not vague or overbroad. We find the *Daniel* analysis, applying *Kokinda*, to be persuasive. The Authority's trespass policy serves a reasonable purpose and is content neutral. Once a person is barred, the person is subject to arrest if he or she returns to the property. We have previously upheld the delegation of authority by a public housing complex to police officers to bar unauthorized individuals from the property for the purpose of preventing crime, protecting property and preserving the peace. *See Holland v. Commonwealth*, 28 Va.App. 67, 502 S.E.2d 145 (1998).

■ Hicks also argues that the street privatization and trespassing enforcement policy infringes on his freedom to associate. We have previously noted that, although the First Amendment does not explicitly protect a "right of association," the Supreme Court of the United States has recognized such a right in two circumstances, "intimate association" and "expressive association." *See Collins v. Commonwealth*, 30 Va.App. 443, 517 S.E.2d 277 (1999). Hicks asserts that his right to intimate human relationships is infringed by the Authority's policy. In *Collins*, we held that "the liberty interest in intimate association is rooted in the necessity of affording 'certain kinds of highly personal relationships a substantial measure of sanctuary from *unjustified* interference by the State.'" *Id.* at 452, 517 S.E.2d at 281 (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 618–19, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984)) (emphasis added).

The only evidence in the record of Hicks' "intimate associations" in Whitcomb Court are his statement to Officer Laino that he was "bring[ing] pampers to his baby" and his statement to Mrs. Rogers that his mother lived there. Assuming without deciding that this evidence constitutes a sufficient

showing that Hicks' right to association is implicated by the Authority's trespassing policy, we consider whether the policy constitutes an unjustified interference with such intimate familial associations.

As already noted, the policy serves a reasonable public safety purpose. Hicks was not a resident of Whitcomb Court. There is no evidence before us that Hicks was invited to the complex. The trespassing policy contains procedures for a resident to secure permission for a guest to come onto the Authority's property but the record is silent as to any efforts to comply with such procedure. Hicks was previously convicted of repeated criminal acts committed on the property. Any interference in Hicks' right to intimately associate with residents of Whitcomb Court caused by his barment is limited to Authority property which, as already stated, though publicly owned, constitutes a "non-public forum" for First Amendment purposes. We find on these facts that to the extent Hicks' barment from the property interfered with his right to "intimate association" with residents of Whitcomb Court, such interference was reasonable, limited and justified.

## IV. Trespass Statute

Finally, Hicks challenges the trespassing statute as unconstitutionally vague and further, that it is unconstitutionally overbroad. We note, however, that while he attacks the statute on these dual grounds, his arguments focus instead on the Authority's policies.

■ "A penal statute is unconstitutionally void-for-vagueness if it does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Santillo v. Commonwealth,* 30 Va.App. 470, 482, 517 S.E.2d 733, 739 (1999) (citation omitted).

■ Code § 18.2–119 is by no means complex or difficult for one of ordinary intelligence to comprehend. It punishes those who enter upon or remain upon the property of another

after having been forbidden to do so by posted sign or personal admonishment. We do not find this statute unconstitutionally vague, either on its face or as applied to Hicks.

 We turn now to Hicks' argument that the trespassing statute is unconstitutionally overbroad.

A statute may be overbroad if it "is one that is designed to burden or punish activities which are not constitutionally protected, but the statute includes within its scope activities which are protected by the First Amendment." Overbreadth is a doctrine whose reach dissipates when a statute proscribes primarily conduct and not speech. If a penal statute proscribes both conduct and speech, "the overbreadth of the statute must ... be substantial ... in relation to the statute's plainly legitimate sweep."

*Parker v. Commonwealth*, 24 Va.App. 681, 690, 485 S.E.2d 150, 154–55 (1997) (citations omitted).

 "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court for [the statute] to be facially challenged on overbreadth grounds." *Id.* (citing *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800–01, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984) (citation omitted) (footnote omitted)).

 We do not find Code § 18.2–119 to be overbroad. The legitimate purpose of the statute is to punish *conduct*, not protected speech. It applies only on private or non-public property. The statute requires prior notice be given to those implicated by its reach. We do not find that the statute imposes a substantial burden on constitutionally protected conduct nor do we find any realistic danger that the First Amendment rights of parties not before the court will be significantly compromised.

For all of these reasons, we affirm the decision of the trial court.

*Affirmed.*

COLEMAN, Judge, concurring, in part, and dissenting, in part.

I concur with Part II of the majority opinion which holds that the circuit court did not err by refusing to remand the case to the general district court. However, I disagree with the majority's holdings that Richmond Redevelopment and Housing Authority's (RRHA's) barment proceeding and "trespass policy" do not violate the First Amendment and the due process clause of the Fourteenth Amendment of the United States Constitution.

I disagree with the majority's conclusion that the barment procedure and trespass statute, as applied in this case, restrict conduct in a "non-public forum," which consists of private streets and sidewalks of a public housing development. In my opinion, the streets and sidewalks of Whitcomb Court are public property open to travel by the public at large and, as such, are a "traditional public forum." Accordingly, any effort by the City of Richmond to control constitutionally protected conduct in a traditional public forum must pass a strict scrutiny test. In my opinion, because the barment procedure and trespass statute infringed on Hicks' right to move freely and to be present in a "traditional public forum," the barment-trespass proceeding violates the First and Fourteenth Amendments. Accordingly, I dissent from those holdings.

The City of Richmond, in an effort to make certain of its streets "private" property, passed an ordinance which authorized deeding those streets to RRHA. After the streets were deeded to RRHA, "No Trespass" signs were posted throughout Whitcomb Court, stating that the property and streets are private property. However, the streets are not gated, barricaded, or otherwise closed or restricted only to Whitcomb Court traffic. The streets remain open to vehicular traffic and the sidewalks are open to access by the public. RRHA's stated goal for "privatization" of the streets was to make the community safer by removing persons from the housing development who commit unlawful acts, particularly involving drugs and firearms; to provide a better opportunity for residents of

the community to develop safety initiatives, such as resident patrols and neighborhood watch; and to hold residents accountable for knowingly harboring criminals.

Although the Richmond City ordinance and deed conveying the streets and sidewalks to RRHA purport to make them private property, both documents specifically provide that the streets "shall be designated as public highways for law enforcement purposes in accordance with Virginia Code Section 46.2–1307 ... and that the City shall retain a full width right of way maintenance easement in the streets." After the City executed the "privatization" deed, RRHA's Director of Housing signed a written "authorization" implementing the barment proceedings. The authorization provided that "each and every Richmond Police Department officer [was authorized] to serve notice, either orally or in writing," forbidding any person from returning to the property if such person could not demonstrate that he or she was a resident or employee, or that he or she was there for a legitimate business or social purpose. According to a printed brochure issued by RRHA to the Whitcomb Court residents, "unauthorized persons," who are subject to the barment proceedings, are all non-residents who cannot demonstrate that they are on the premises "visiting a lawfully residing resident, or on the development conducting legitimate business."

The police officer, who decides whether the person is to be barred, determines whether the person is a tenant or is there at the invitation of a tenant, or whether the reason for being there is legitimate. Thereafter, once a person is barred, he or she is subject to being prosecuted for trespass for being on the streets or sidewalks in Whitcomb Court even if the person is subsequently there at the invitation of a tenant or there on legitimate business. Thus, to be barred from Whitcomb Court, one does not have to be guilty of a crime in Whitcomb Court or to have done anything wrong, but rather, one simply has to fail to fit within the category of people who RRHA has deemed entitled to be on the streets and sidewalks in the public housing development. Once barred, the person who returns is a trespasser without regard to whether, on that

subsequent occasion, he or she is there on legitimate business or at the invitation of a Whitcomb Court tenant.

The City is entitled, and is in fact required within constitutional limits, to control its streets and sidewalks so as to make them safe and to control crime thereon. However, it may not, in its endeavor to control crime on the streets, sweep so broadly that it unduly restricts or criminalizes innocent or protected behavior. Because the police officers have such broad discretion in determining whether a person, who was on the streets and sidewalks of the housing development, was there at the invitation of a tenant or was there for a "legitimate" purpose, the officers could, as they did here, bar a person from public property for exercising a constitutionally protected right. Once barred, the person continues to be barred and subject to a trespass conviction, as with Hicks, even though he or she may subsequently be there at the invitation of a tenant or for legitimate purposes. *See generally NAACP v. Alabama,* 377 U.S. 288, 307, 84 S.Ct. 1302, 1313, 12 L.Ed.2d 325 (1964). The evidence does not indicate that Hicks was initially barred because he had committed any unlawful act in Whitcomb Court.[4] According to the unrefuted avowal of defense counsel, Hicks was barred from Whitcomb Court because he repeatedly returned there to visit his mother, his aunt, and the mother of his two infant children who live in Whitcomb Court. After being barred, Hicks was given written notice of his barment, for which he signed, from housing manager Gloria Rogers. On the occasion for which Hicks was subsequently charged with the trespass that is the subject of this appeal, he was walking on the sidewalk of the 2300 block of Bethel Street in Whitcomb Court and was purportedly there to see that his child, who lived there with its mother, received diapers.

---

4. As the majority notes, Hicks was convicted of destroying private property in Whitcomb Court after he had been barred for being there not as a tenant or at the express invitation of a tenant. However, the conviction for destroying private property was irrelevant to the barment proceeding or to Hicks' trespass conviction.

The question presented in this appeal is whether the barment proceeding adopted by RRHA, which authorizes Richmond City police officers to banish people who do not fit within a narrowly defined group from coming upon the streets and sidewalks in Whitcomb Court, and the trespass statute as used to enforce the barment proceeding, violate the First and Fourteenth Amendments. The critical issue in answering that question is whether the streets and sidewalks are public and, as such, are a "traditional public forum," or whether they are "private" and, thereby, a "non-public forum."

The constitutionality of government regulation of its own property depends upon the character of the property at issue. For purposes of First Amendment analysis, the Supreme Court has identified three types of government-owned property: the traditional public forum, the designated forum, and the nonpublic forum. A traditional public forum, such as a street or park, is one that has as "a principal purpose ... the free exchange of ideas." A designated forum is one which the government intentionally opens to the public for expressive activity.

Government limitations on expressive activity in traditional public fora and designated public fora are subject to strict scrutiny; they must be narrowly tailored to serve a compelling state interest. By contrast "[a] nonpublic forum is 'public property which is not by tradition or designation a forum for public communication,'" and limits on access to such need only be reasonable....

*Daniel v. City of Tampa*, 38 F.3d 546, 549 (11th Cir.1994) (citations omitted).

Although the grounds and buildings of a public housing development are a "non-public forum" designed to provide safe housing for its residents, *see id.* at 550, the public streets and sidewalks in Whitcomb Court are not private and do not lose their character as a "traditional public forum" merely because the City passes an ordinance and executes a deed declaring them to be private property. The streets and sidewalks have not been gated, barricaded, or closed in a manner restricting public travel. Although the "No Trespass-

ing" street signs declare that the streets are for the exclusive use of the tenants and those there on legitimate business, the streets and sidewalks continue to serve the same function as before and are equally accessible to the travelling public.

We have previously approved a process by which police officers may be designated as agents of a housing authority to serve barment notices on persons trespassing on housing authority property, *see Collins v. Commonwealth,* 30 Va.App. 443, 449, 517 S.E.2d 277, 280 (1999); *Holland v. Commonwealth,* 28 Va.App. 67, 70–76, 502 S.E.2d 145, 146–49 (1998). In *Collins,* we further held that the barment notices prohibiting non-residents from coming upon housing authority property do not violate the "right of association" protected by the First Amendment or the due process clause of the Fourteenth Amendment. *See Collins,* 30 Va.App. at 450–53, 517 S.E.2d at 280–82. However, what distinguishes this case from those, in my opinion, is that Hicks was found guilty of trespass for having gone upon Bethel Street and the adjacent sidewalk, whereas in both *Holland* and *Collins,* the defendants were on the non-public grounds and in the buildings of the housing authority.

The majority relies upon the holding in *Daniel,* 38 F.3d 546, for its conclusion that the "trespass after warning" restriction the housing authority had placed upon access to a "non-public forum" was reasonable. In my opinion, Richmond City Ordinance No. 97–181–197, which authorizes deeding certain city streets to RRHA in an effort to "privatize" the streets in Whitcomb Court and make them subject to the Commonwealth's trespass statute, Code § 18.2–119, did not make the street any less a public street or thoroughfare and did not make it a "non-public forum," as was the situation in *Daniel.* The Eleventh Circuit held in *Daniel* that the mission of the housing authority was to provide safe housing for residents, not to provide non-residents "a place to disseminate ideas." Thus, the buildings and grounds were considered a non-public forum for purposes of determining the extent to which the government could, consistent with the First Amendment, regulate the public's activity on the property. *See* 38 F.3d at 550.

However, the *Daniel* court was careful to point out that the Tampa "trespass after warning" ordinance did not apply to persons on the "streets and sidewalks surrounding and intersecting" the housing authority property. *See id.* at 548 n. 3, 550 n. 9.

"A traditional public forum, such as a street or park, is one that has as 'a principal purpose ... the free exchange of ideas.'" *Id.* at 549 (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985)). Bethel Street is a public street that was built and maintained with public funds to provide access by the public to that part of Richmond. As with all public streets and thoroughfares, historically and traditionally public streets have served as a locale for the free exchange and dissemination of ideas and have served as an area that citizens can freely and lawfully congregate or move about and exchange discourse.

The fact that legal title to the streets is transferred from a municipal government to a government agency which owns and operates a public housing development in no way changes the public nature and character of the streets and sidewalks which provide access to the public to this part of the City. *See Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (holding that privately owned streets and sidewalks in a company-owned town which are open to public access are traditional public forums that are circumscribed by First Amendment constitutional guarantees). The City cannot transform the public streets in Whitcomb Court into private or non-public streets by declaring them closed by ordinance and conveying them to another governmental entity when they continue to serve the same public purpose as before.

Thus, the City's and RRHA's effort to control conduct or the lawful freedom of movement on a city street, which is a "traditional public forum," by "privatizing" the street and prohibiting citizens from using the streets and sidewalks must pass a strict scrutiny test. In order for the barment-trespass policy to satisfy the strict scrutiny test, the enforcement

procedure must be narrowly tailored to serve a compelling state interest, providing safe housing to the development residents. In my view, the RRHA's privatization effort and barment procedure does not satisfy the requirement that the barment-trespass procedure be narrowly tailored because the procedure (1) infringes on the constitutionally protected right of a person's freedom to "remove from one place to another according to inclination," *Williams v. Fears,* 179 U.S. 270, 274, 21 S.Ct. 128, 129, 45 L.Ed. 186 (1900), and to move freely in a traditional public forum, *see City of Chicago v. Morales,* 527 U.S. 41, 54, 119 S.Ct. 1849, 1858, 144 L.Ed.2d 67 (1999) (holding "it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage' "), and (2) is not limited to apply only to those persons whose conduct the procedure was intended to curtail. In other words, the sweep of the barment-trespass proceeding is so broad that citizens who do not infringe upon the privacy rights of the residents of Whitcomb Court are deemed guilty of criminal conduct for engaging in constitutionally protected public behavior by merely being upon the public street or sidewalk.

Perhaps, had Bethel Street been gated, barricaded, or physically restricted to traffic where the public was not free to travel, as with gated communities, the street would be considered non-public and not a "traditional public forum." But, in my opinion, the City can no more "close" the streets in Whitcomb Court and leave them open to the public, thereby purporting to make them a "non-public forum," than it could declare "closed" all streets in Richmond's troubled neighborhoods and residential areas, thereby denying access to all citizens except the residents and their invitees and those having legitimate business in the neighborhoods. Neighborhood streets, such as those in Whitcomb Court, are public streets, paid for and maintained with public funds, for the use and benefit of the public.

While a public entity can restrict the use of public property or buildings to those who are using the property for its

intended "non-public" purpose, such as an office building, it cannot restrict public property that is considered a "traditional public forum," such as a street or sidewalk, that is being used in a lawful way and for a lawful purpose that is constitutionally protected. *See United States v. Kokinda*, 497 U.S. 720, 727, 110 S.Ct. 3115, 3120, 111 L.Ed.2d 571 (1990) (holding that sidewalk in front of post office "constructed solely to provide for the passage of individuals engaged in postal business" is a non-public forum). Here, in effect, the City and RRHA, by attempting to convert the streets and sidewalks to private property, are attempting to confer upon RRHA the same rights as a private property owner who may restrict everyone from coming upon the private property owner's property except the owner's tenants and the tenants' invitees, regardless of whether the invitees had done anything unlawful. In fact, the City's attempt to control access to the streets and sidewalks through the barment-trespass proceeding exceeds the right of a private landowner because under the barment proceeding, once barred, an invitee of a tenant can no longer lawfully come upon the property.

Accordingly, I would reverse Hicks' trespass conviction, because Richmond's barment-trespass procedure, in an effort to control drugs and criminal activity in and around a public housing development, unconstitutionally infringes upon a citizen's First and Fourteenth Amendment rights to lawfully congregate in a public place.[5]

---

**5.** Because I would reverse on the failure of the City to establish that the barment-trespass procedure meets the strict scrutiny requirements, I do not address whether the barment-trespass procedure, including notice, opportunity to be heard, and an administrative appeals procedure, satisfies the procedural due process requirements of the Fourteenth Amendment. Because the majority only addresses the vague and overbroad issue as they relate to the trespass statute procedure, I decline to address whether the barment-trespass procedure is vague or overbroad.