Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

COMMONWEALTH OF VIRGINIA

OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
April 23, 2004

v.  Record No. 011728

KEVIN LAMONT HICKS

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

I.

In this proceeding, which has been remanded to this Court
from the Supreme Court of the United States, we consider
whether a redevelopment and housing authority's trespass
policy is void for vagueness under the Fourteenth Amendment to
the United States Constitution and whether that policy
violates a defendant's right of intimate association
guaranteed by the Fourteenth Amendment.

II.

In Commonwealth v. Hicks, 264 Va. 48, 58, 563 S.E.2d 674,
680 (2002)[1], we held that a trespass policy implemented by the

---

[1] Hicks was charged with trespass in violation of Code
§ 18.2-119, and he was convicted in the City of Richmond
General District Court.  He appealed the convictions to the
Circuit Court of the City of Richmond where he was convicted.
He appealed the judgment to the Court of Appeals.  A panel of
the Court of Appeals affirmed the judgment, Hicks v.
Commonwealth, 33 Va. App. 561, 535 S.E.2d 678 (2000), but the
Court of Appeals, en banc, disagreed with the panel and
vacated Hicks' conviction because the Housing Authority's
trespass policy contravened the First and Fourteenth

Richmond Redevelopment and Housing Authority (Housing Authority) was overly broad and, therefore, violated the First and Fourteenth Amendments to the United States Constitution. The United States Supreme Court disagreed with our holding and concluded that the challenged policy was not overly broad in violation of the First Amendment. <u>Virginia v. Hicks</u>, 539 U.S. 113, ___, 123 S.Ct. 2191, 2199 (2003). The Supreme Court remanded the case to this Court so that we could consider whether Hicks may challenge his conviction on other bases, assuming that those claims had been properly preserved. This Court entered an order directing Hicks and the Commonwealth to identify issues that had been asserted in the circuit court that the litigants thought had been preserved for this Court's consideration. Subsequently, this Court entered an order directing the litigants to address the following questions:

"1. Whether the Housing Authority's trespass policy violates appellee's right of association in violation of the First Amendment?

"2. Whether the Housing Authority's trespass policy is unconstitutionally vague on its face or as applied to appellee?

---

Amendments to the Constitution of the United States. <u>Hicks v. Commonwealth</u>, 36 Va. App. 49, 52, 548 S.E.2d 249, 251 (2001).

"3.  Whether the Housing Authority's trespass policy violates appellee's [rights to] freedom of intimate association in contravention of the Fourteenth Amendment?"

The litigants agree, in view of the Supreme Court's holding that the Housing Authority's trespass policy did not affect Hicks' First Amendment right to expressive association, that this Court need not consider the first question stated above.  Therefore, we limit our consideration to the remaining questions set forth in this Court's order.

### III.

The Housing Authority is a political subdivision of the Commonwealth of Virginia.  The Housing Authority owns and operates several housing developments in the City of Richmond for low-income residents, including a housing development known as Whitcomb Court.

In an effort to eradicate illegal drug activity in its housing developments, including Whitcomb Court which was described as an "open-air drug market," the Housing Authority decided to deny access to its property to persons who did not have legitimate reasons to visit the housing developments. The majority of persons who had been arrested for drug crimes at the Whitcomb Court housing development were people who did not reside there.

The Richmond City Council enacted an ordinance that "closed to public use and travel and abandoned as streets of the City of Richmond," streets and sidewalks in Whitcomb Court because the streets and sidewalks were "no longer needed for the public convenience." The City conveyed the streets and sidewalks by recorded deed to the Housing Authority.

The Housing Authority, in its capacity as owner of the private streets and sidewalks, authorized

> "each and every Richmond Police Department officer to serve notice, either orally or in writing, to any person who is found on Richmond Redevelopment and Housing Authority property when such person is not a resident, employee, or such person cannot demonstrate a legitimate business or social purpose for being on the premises. Such notice shall forbid the person from returning to the property. Finally, Richmond Redevelopment and Housing Authority authorizes Richmond Police Department officers to arrest any person for trespassing after such person, having been duly notified, either stays upon or returns to Richmond Redevelopment and Housing Authority property."

Defendant, Kevin Lamont Hicks, was convicted in the City of Richmond General District Court for trespass upon the Housing Authority's property on December 12, 1997. The general district court sentenced Hicks on February 10, 1998.

Gloria S. Rogers, a manager for the Housing Authority, gave Hicks a letter dated April 14, 1998. The letter states in part:

> "This letter serves to inform you that effective immediately you are not welcome on

4

Richmond Redevelopment and Housing Authority's Whitcomb Court or any Richmond Redevelopment and Housing Authority property. This letter is an official notice informing you that you are not to trespass on [the Housing Authority's] property. If you are seen or caught on the premises, you will be subject to arrest by the police.

"A copy of this notice is on file and another copy will be provided to the Richmond Police Department for [its] record.

"**Virginia Code, Section 18.2-119**
**"Trespass After Having Been Forbidden to do So**

**"If any person without authority of law goes upon or remains upon the lands, buildings, or premises of another, or any part, portion or area thereof, after having been forbidden to do so, either orally or in writing by the owner, lessee, custodian, or other person lawfully in charge thereof, or after having forbidden to do so by a sign or signs posted . . . on such lands, buildings, premises or portion of area thereof at a place or places where it may be reasonably seen . . . he and/or she shall be guilty of a Class I Misdemeanor.**

"Thank you for your cooperation.

"Sincerely,
"[Signed Gloria S. Rogers]
"Housing Manager

"[Whitcomb]
"Development

"I, the undersigned, acknowledge receipt of this notice.

"[Signed Kevin Hicks]    [4-14-98]
"Signature                Date received

"[Signed Alfonzo Joyner] [4-14-98]
"Witnessing Officer      Date"

5

Even though Hicks signed and received the letter dated April 14, 1998 informing him that he could not appear on the Housing Authority's property, he re-entered the property and was arrested for trespass by the Richmond Police Department on April 20, 1998. He appeared in the City of Richmond General District Court on June 26, 1998, and he was convicted of trespass in violation of Code § 18.2-119.

On January 20, 1999, Richmond Police officer, James Laino, was driving his police cruiser in the Whitcomb Court housing development. He observed Hicks, whom he had known from previous encounters. Laino had been present when Hicks was arrested for a prior trespass offense on the Housing Authority's property.

Officer Laino stopped his "police car and started to speak with Mr. Hicks. [Laino] said, 'I know you're not supposed to be out here.' " Hicks responded that he was "just getting pampers for his baby." Laino issued a summons to Hicks for trespassing. During Hicks' bench trial in the circuit court, Officer Laino testified that the buildings at the Whitcomb Court housing development where the defendant was arrested for trespass contained "red and white" signs that stated that the streets in Whitcomb Court "are privatized and all the property is privatized, no trespass."

Gloria Rogers gave the following testimony during the trial:

> "Q: All right. Please tell the Court, has [Hicks] come and have you banned him from the [Housing Authority's] property?
> "A: Yes.
> "Q: All right. Please tell the Court how that came about.
> "A: It came about in two respects. Number one — . . . .
> "Number one, when the police see a person in the development and they say that they live someplace, they confirm with the office. And Kevin Hicks, they quite often saw him in the development and he gave them an address and I would pull the file and confirm he didn't live there.
> "Secondly, because of the domestic violence in the development.
>
>                                . . . .
>
> "THE COURT: . . . Ma'am, have you told him to stay off the property before?
> "THE WITNESS: Yes.
> "THE COURT: How many times?
> "THE WITNESS: I talked to Kevin Hicks in person twice."

The Circuit Court of the City of Richmond convicted Hicks of trespass in violation of Code § 18.2-119. This conviction is the subject of this remand from the Supreme Court.

## IV.

## A.

Hicks argues that the Housing Authority's trespass policy is unconstitutionally vague in violation of the Fourteenth

7

Amendment to the United States Constitution.[2]  He asserts that

the Housing Authority's trespass policy grants its employees

and police officers "sweeping powers to define as criminal the

innocent conduct of using streets and sidewalks near public

housing."  Continuing, Hicks claims that the Housing

Authority's trespass policy is similar to an anti-loitering

ordinance that the Supreme Court of the United States held was

invalid in Chicago v. Morales, 527 U.S. 41 (1999).

Responding, the Commonwealth asserts that Hicks may not

challenge whether the trespass policy is unconstitutionally

vague because his conduct was clearly proscribed by that

policy, and the ordinance that the Supreme Court invalidated

in Morales is fundamentally different from the Housing

Authority's trespass policy.

The Supreme Court, in Hoffman Estates v. Flipside,

Hoffman Estates, Inc., 455 U.S. 489 (1982), stated the

following principles which are pertinent to our resolution of

this proceeding:

> "In a facial challenge to the overbreadth and
> vagueness of a law, a court's first task is to
> determine whether the enactment reaches a
> substantial amount of constitutionally protected
> conduct.  If it does not, then the overbreadth
> challenge must fail.  The court should then examine

---

[2] Hicks also argues that the Housing Authority's trespass
policy violates Article 1, Section 8 of the Constitution of
Virginia.  Hicks did not make this argument in the circuit
court and, therefore, we will not consider it.

the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.  A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.  A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law."

Id. at 494-95 (emphasis added).  Additionally, the Supreme Court stated in Parker v. Levy, 417 U.S. 733, 756 (1974), that:  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  Accord Gibson v. Mayor of Wilmington, 355 F.3d 215, 225 (3d Cir. 2004); Fuller v. Decatur Public School Board of Education School District 61, 251 F.3d 662, 667 (7th Cir. 2001); Joel v. Orlando, 232 F.3d 1353, 1359-60 (11th Cir. 2000); United States v. Tidwell, 191 F.3d 976, 979 (9th Cir. 1999); United States v. Hill, 167 F.3d 1055, 1063-64 (6th Cir. 1999); Woodis v. Westark Community College, 160 F.3d 435, 438-39 (8th Cir. 1998); United States v. Corrow, 119 F.3d 796, 803 (10th Cir. 1997); Love v. Butler, 952 F.2d 10, 14 (1st Cir. 1991); Hastings v. Judicial Conference of the United States, 829 F.2d 91, 107 (D.C. Cir. 1987); Hill v. City of Houston, 789 F.2d 1103, 1127 (5th Cir. 1986), aff'd, 482 U.S. 451 (1987); Gallaher v. City of Huntington, 759 F.2d 1155, 1160 (4th Cir. 1985).

It is clear that Hicks, who was engaged in conduct prohibited by the Housing Authority's trespass policy, may not complain that the policy is purportedly vague. Hicks was arrested and convicted for violation of Code § 18.2-119, which states in relevant part:

> "If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof, or after having been forbidden to do so by a sign or signs posted by such persons . . . he shall be guilty of a Class 1 misdemeanor."

Prior to the conviction that is involved in this proceeding, Hicks had been convicted of two other charges of criminal trespass on the Housing Authority's property in violation of Code § 18.2-119. Hicks had also received a hand-delivered letter, which he signed and acknowledged, that directed him not to return to the Housing Authority's property. That letter also informed Hicks that if he returned to the Housing Authority's property, he would be prosecuted for trespass. Hicks cannot now complain that the Housing Authority's trespass policy is somehow vague. Certainly, as to him, the Housing Authority's trespass policy could not have been any clearer.

The Supreme Court's decision in Morales does not support Hicks' contention that he may assert that the Housing

10

Authority's trespass policy is facially unconstitutionally vague. The Supreme Court's decision in Morales simply has no application to this case.

The facts in Morales are as follows. The Chicago City Council enacted an ordinance that prohibited "criminal street gang members" from "loitering" with one another or with other persons in any public place. The ordinance created a criminal offense punishable by a fine not to exceed $500, imprisonment for not more than six months, and a requirement that anyone convicted of violating the ordinance perform a maximum of 120 hours of community service. Commission of the crime involved four elements: a police officer must reasonably believe that at least one of two or more persons present in a public place is a criminal street gang member; the persons must be "loitering" which was defined as "remaining in any one place with no apparent purpose"; "the officer must then order 'all' the persons to disperse and remove themselves 'from the area'"; and the "person must disobey the officer's order." The ordinance defined "public place" as "the public way and any other location open to the public, whether publicly or privately owned." 527 U.S. at 45-47.

The Supreme Court recognized that

"the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. We have expressly

identified this 'right to remove from one place to another according to inclination' as 'an attribute of personal liberty' protected by the Constitution. . . .   Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage,' . . . or the right to move 'to whatsoever place one's own inclination may direct' identified in Blackstone's Commentaries.  1 W. Blackstone, Commentaries on the Laws of England 130 (1765)."

527 U.S. at 53-54 (citations omitted).

In Morales, the Supreme Court permitted the defendants to assert a facial challenge based upon vagueness to the ordinance:

"For it is clear that the vagueness of this enactment makes a facial challenge appropriate. This is not an ordinance that 'simply regulates business behavior and contains a scienter requirement.'  See Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982).  It is a criminal law that contains no mens rea requirement, see Colautti v. Franklin, 439 U.S. 379, 395 (1979), and infringes on constitutionally protected rights . . . .  When vagueness permeates the text of such a law, it is subject to facial attack."

Id. at 55.

Unlike the ordinance that was implicated in Morales, Hicks was convicted of violation of a criminal trespass statute, Code § 18.2-119, which has an intent requirement because the Commonwealth was required to prove that Hicks committed an act of intentional trespass.  See Reed v. Commonwealth, 6 Va. App. 65, 70-71, 366 S.E.2d 274, 278

12

(1988).  Also, unlike the ordinance in <u>Morales</u>, the Housing Authority's trespass policy is not a penal ordinance.  The Housing Authority's policy is intended to regulate the behavior of people who appear on private property owned by the Housing Authority, which provides safe and affordable housing for low- and moderate-income individuals.  The Housing Authority's trespass policy is not a penal ordinance and, indeed, one could be arrested and convicted for trespass on the Housing Authority's privately-owned property even if the trespass policy did not exist.  And, unlike the ordinance in <u>Morales</u> that affected persons on public property, the Housing Authority's trespass policy only applies to persons who commit acts of intentional criminal trespass upon the Housing Authority's privately-owned real property.

B.

Hicks argues that the Housing Authority's trespass policy violates his right to freedom of intimate association with his family guaranteed by the Fourteenth Amendment to the United States Constitution.  Continuing, Hicks states that he "was permanently prohibited from visiting his mother and his children in their homes [in Whitcomb Court] simply because a government official decided, without providing [him] any procedural protections or even an explanation, that [he] did not have a 'legitimate purpose' to be on the streets and

13

sidewalks near the Whitcomb Court housing project."  Hicks says that this governmental intrusion violates his constitutional right of association with his family members. We disagree.

The Fourteenth Amendment states in relevant part:  "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The right to create and maintain certain intimate or private relationships is guaranteed under the substantive due process component of the Fourteenth Amendment of the United States Constitution.  The Supreme Court has stated:

> "The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State.  E.g., Pierce v. Society of Sisters, 268 U.S. 510, 534-535 (1925); Meyer v. Nebraska, 262 U.S. 390, 399 (1923). Without precisely identifying every consideration that may underlie this type of constitutional protection, we have noted that certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State. See, e.g., Zablocki v. Redhail, 434 U.S. 374, 383-386 (1978); Moore v. East Cleveland, 431 U.S. 494, 503-504 (1977) (plurality opinion). . . .  Moreover, the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others.  Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to

14

define one's identity that is central to any concept of liberty. . . .
"The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family — marriage . . . ; the raising and education of children . . . ; and cohabitation with one's relatives."

Roberts v. United States Jaycees, 468 U.S. 609, 618-19 (1984) (citations omitted).  The Supreme Court has also stated that:

"Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society,' Boddie [v. Connecticut], 401 U.S. [371] at 376 [(1971)], rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect."

M.L.B. v. S.L.J., 519 U.S. 102, 116 (1996); accord Meyer v. Nebraska, 262 U.S. 390, 399-400 (1923); Moore v. City of East Cleveland, 431 U.S. 494, 499 (1977).

We conclude, based upon the facts in the record before this Court that Hicks, who purportedly was delivering diapers to the mother of his child at a specific location, has not established the existence of an intimate relationship between Hicks and his child or Hicks and his mother.  The record simply does not support such conclusion.  However, assuming the existence of an intimate relationship, we hold that this right of intimate association is not without limitations. Certainly, Hicks does not have the constitutional right to

15

visit either his mother or his child at the Housing Authority's private property where he has been barred because of his prior criminal conduct.  Hicks' alleged right of intimate association does not permit him to commit intentional acts of criminal trespass upon property owned by the Housing Authority.

We also note that the Housing Authority's trespass policy does not impair any rights of intimate association that Hicks may have with his mother or his child.  Hicks remains free to exercise whatever rights of intimate association he may possess with his mother and his child; he simply may not do so on property owned by the Housing Authority.  The Housing Authority's trespass policy does not prevent Hicks from developing and nurturing those relationships.  Rather, the Housing Authority's policy, when enforced in conjunction with Virginia's criminal trespass statutes, bars trespassers from entering the Housing Authority's property.

VI.

Accordingly, we will reverse the judgment of the Court of Appeals, and we will enter a final judgment affirming the conviction of trespass entered by the circuit court.

_Reversed and final judgment_.